James H. GOLD, Plaintiff-Appellant,†

v.

CITY OF ADAMS, Defendant-Respondent.

Court of Appeals

*No. 01–1173. Submitted on briefs October 5, 2001.—Decided January 31, 2002.*

2002 WI App 45

(Also reported in 641 N.W.2d 446.)

†Petition to review denied 5-21-02.

313

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas M. Croke* of *Thomas Croke Law Office, S.C.* of Adams.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alyson K. Zierdt* of *Davis & Kuelthau, S.C.* of Oshkosh.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J. Over a period of three years, the City of Adams increased some components of Chief of Police James Gold's total cash payments from the City, but it also reduced and then eliminated one component, the "longevity bonus." Gold contends that the City acted unlawfully by decreasing his longevity bonus without first obtaining a recommendation from the board of police and fire commissioners, pursuant to WIS. STAT. § 62.13(7) (1999–2000).[1] The circuit court agreed that a reduction in cash payments to Gold required prior board approval, but it awarded Gold less damages than he claimed. Gold appealed, and the City, while arguing that the circuit court correctly interpreted the statute, also contends that the appeal should be dismissed because Gold was not "aggrieved" by the circuit court's decision. We conclude that because the circuit court's decision directly injured Gold's alleged interests in an appreciable manner, Gold is an aggrieved party who may appeal as of right. We also conclude that the circuit court properly interpreted and applied § 62.13(7) by comparing the total cash payments Gold received for each year at issue with the total

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

cash payments he received for the immediately preceding year. Accordingly, we affirm the circuit court's judgment.

## BACKGROUND

¶ 2. James Gold has been employed by the City of Adams since 1979 and has served as the City's Chief of Police since 1986. During all years relevant to this appeal, he has been paid (1) an annual base salary set by resolution of the City's common council and (2) additional cash payments. From 1984 through 1996, the cash payments in addition to his base salary included a "longevity bonus," defined as follows:

> After five (5) years of service, 1% of the yearly total gross income (yearly salary) is paid. Each year thereafter, the rate of longevity paid will increase by 1% per year, until the maximum rate of 7% of the yearly income has been reached.

As suggested by the quoted language, the longevity bonus was calculated by multiplying Gold's annual base salary by the applicable percentage. Because of the length of his service to the City, Gold earned the maximum 7% longevity bonus in 1996 and in several years prior to 1996.

¶ 3. In 1997, the City began to phase out the longevity bonus. Accordingly, Gold received only a 3.7% longevity bonus in 1997, a 3.5% longevity bonus in 1998 and no longevity bonus in 1999. However, in the same time frame, the City increased Gold's base salary and other cash payments so that his total cash receipts in any year were nearly equivalent to those he had received in the previous year. In summary form, Gold's annual cash receipts from 1996 until 1999 were as follows:

| Year | Base Salary | LongevityBonus | Other Cash Payments | Total Cash Payments |
|------|-------------|----------------|---------------------|---------------------|
| 1996 | $31,167.77 | $2,181.74 (7.0%) | $1,198.76 | $34,548.27 |
| 1997 | $32,102.80 | $1,187.80 (3.7%) | $1,257.51 | $34,548.12 |
| 1998 | $33,146.14 | $1,160.11 (3.5%) | $2,935.20 | $37,241.45 |
| 1999 | $34,223.39 | $0.00 (0.0%) | $2,156.28 | $36,379.67 |

¶ 4. Following the City's decision to reduce and eventually eliminate the longevity bonus, Gold brought this action claiming that the City had unlawfully decreased his salary without following the requirements of WIS. STAT. § 62.13(7).[2] The circuit court held that to the extent the City had decreased Gold's total cash payments during any of the years at issue, the City had failed to comply with § 62.13(7) because it had not first obtained the required recommendation. The circuit court did not separately compare the amount of each component in a given year to what that component had been in the previous year, as Gold had argued it should.[3]

_____

[2] WIS. STAT. § 62.13(7) reads as follows:

> COMPENSATION. The salaries of chiefs and subordinates shall be fixed by the council. Unless the council otherwise provides, in cities of the 4th class rewards for the apprehension of criminals may be retained by the person entitled thereto. Such salaries when so fixed may be increased but not decreased by the council without a previous recommendation of the board. The council may provide that the salaries shall increase with length of service.

[3] Gold asserted that his damages for each year following 1996 equaled the difference between a full 7% longevity bonus and any actual longevity bonus payment that he received, irrespective of any other amounts he received. Applying this interpretation of WIS. STAT. § 62.13(7), Gold claimed a total of $4,615 in damages for 1997 through 1999. He also asserted an interest in future longevity bonuses at 7% per year.

¶ 5. The circuit court concluded that the term "salaries" as used in Wis. Stat. § 62.13(7) encompasses more than simply an employee's annual base salary. It held that it encompassed the total annual cash payments made, including the longevity bonus. The circuit court reasoned that § 62.13(7) was contravened only if the total cash payments in a given year were less than the total cash payments received in the preceding year. The circuit court then calculated that the City had unlawfully decreased Gold's "salaries" within the meaning of § 62.13(7) by $0.15 in 1997 and by $861.78 in 1999. The circuit court further concluded that the total cash payments Gold received in 1998 had increased as compared to 1997, and it awarded no damages for 1998.

## DISCUSSION

**Standard of Review.**

¶ 6. Only aggrieved parties have a right to appeal. *Tierney v. Lacenski*, 114 Wis. 2d 298, 302, 338 N.W.2d 522, 524 (Ct. App. 1983). We decide as a matter of law whether an appellant is an aggrieved party and whether the court has jurisdiction to hear and determine the appeal. *Snopek v. Lakeland Med. Ctr.*, 215 Wis. 2d 539,

---

We note that Gold has not challenged the circuit court's calculation of his total annual cash payments for any of the years at issue. In particular, Gold has raised no issue concerning whether the circuit court properly identified the separate cash components he received. Similarly, the City has not appealed the circuit court's ruling that Wis. Stat. § 62.13(7) applies to the City of Adams. As these issues have not been presented for our review, we express no opinion on them.

319

544, 573 N.W.2d 213, 215 (Ct. App. 1997), *rev'd on other grounds,* 223 Wis. 2d 288, 588 N.W.2d 19 (1999).

¶ 7. The facts here are undisputed. Statutory construction and the application of a statute to undisputed facts are questions of law that we review *de novo.* *Truttschel v. Martin,* 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997).

## Aggrieved Party.

¶ 8. A party is aggrieved and may bring an appeal as of right if the appealed judgment or order directly injures the party's interests in an appreciable manner. *Tierney,* 114 Wis. 2d at 302, 338 N.W.2d at 524. Applying this standard, we conclude that Gold is an aggrieved party.

¶ 9. Gold asserts an interest in a 7% longevity bonus unless and until the City decreases the bonus after first obtaining a recommendation from the City's board of police and fire commissioners, without consideration of whether his total cash receipts have diminished. The circuit court rejected this argument. Instead, the circuit court concluded that, for purposes of Wis. Stat. § 62.13(7), Gold was protected only from decreases in the total cash payments he received. Significantly, Gold did not argue for an alternative result. The difference between the damages that Gold sought and the damages actually awarded by the circuit court was about $3,752. In addition, the circuit court's decision directly affects Gold's asserted interest in future longevity bonus payments.

■ ¶ 10. Because the circuit court denied Gold the relief he requested, and because there is a substantial difference between the damages sought and the damages awarded, we conclude that Gold's alleged interests have been directly injured in an appreciable manner. *See Snopek*, 215 Wis. 2d at 546, 573 N.W.2d at 216 (distinguishing *State v. Castillo*, 213 Wis. 2d 488, 570 N.W.2d 44 (1997), on the grounds that the defendant-petitioner in *Castillo* had received one of the three alternative forms of relief that he had requested).[4] Accordingly, Gold is an aggrieved party with a right to appeal.

**Statutory Interpretation.**

■ ¶ 11. When we are asked to apply a statute whose meaning is in dispute, our aim is to ascertain the intent of the legislature. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. We begin with the language of the statute itself, looking not simply at isolated words or phrases, but at the meaning of the relevant language in the context of the entire statute. *Id.*; *Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515. "If the language of the statute clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the case at hand and not look beyond the statutory language to

---

[4] We conclude that we need not address Gold's contention that the statutory "adverse decision" standard applied in *State v. Castillo*, 213 Wis. 2d 488, 570 N.W.2d 44 (1997), is different from the "aggrieved party" standard set forth and applied in *Tierney v. Lacenski*, 114 Wis. 2d 298, 338 N.W.2d 522 (Ct. App. 1983).

ascertain its meaning." *Landis v. Physicians Ins. Co. of Wis., Inc.*, 2001 WI 86, ¶ 14, 245 Wis. 2d 1, 628 N.W.2d 893. However, if the language chosen by the legislature is capable of more than one reasonable meaning, this court will determine legislative intent from the statute's context, subject matter, scope and history, as well as the goal the legislature was attempting to accomplish. *Truttschel*, 208 Wis. 2d at 365–66, 560 N.W.2d at 317.

■

¶ 12. WISCONSIN STAT. § 62.13(7) provides that Gold's "salaries . . . may be increased but not decreased by the council without a previous recommendation of the board." The term "salaries" is not defined in ch. 62. However, the supreme court presumed salary means cash payments in its discussion of "compensation" under WIS. STAT. § 62.13(9) (1969). *See State ex rel. City of Manitowoc v. Police Pension Bd. for the City of Manitowoc*, 56 Wis. 2d 602, 609–12, 203 N.W.2d 74, 77–79 (1973). This term is potentially ambiguous. For example, the legislative choice of the plural form of the noun, salary, could indicate the legislature's acknowledgement that a police chief may receive several types of cash payments, as Gold has here, or it may refer only to base salary, or it may simply flow from addressing salaries of two different groups, *i.e.,* salaries of the chiefs and their subordinates. However, none of those constructions supports Gold's contention. In order to interpret the statute as Gold requests us to do, we would have to re-write the statute as: "Such salaries when so fixed may be increased but *no part* may be decreased by the council without a previous recommendation of the board." While we understand Gold's concerns, we are not free to re-write the statutes. That task belongs to the legislature.

¶ 13. Additionally, we fail to see how individually protecting the various components of an overall salary formula would further the purpose of the statute, which is to promote the independence of the police department and to protect the police chief from arbitrary, imprudent or improperly motivated decreases in the payments made by the municipality. *See Van Gilder v. City of Madison*, 222 Wis. 58, 63, 267 N.W. 25, 27 (1936) ("[T]he end to be achieved by this section . . . is to lodge a degree of control over the police and fire departments and so prevent the disorganization and deterioration of the departments . . . ."). All the payments at issue here are cash payments, making them all fungible components of Gold's salary. Therefore, Gold could make a mortgage payment or purchase tickets for a ball game just as easily with the cash he received from his base salary as he could with the cash he received from a longevity bonus. Accordingly, reducing the cash payments of one component while increasing them in another could not compromise Gold's independence as a member of the police department through financial pressure. Decreases would run contrary to the purpose of the statute only if Gold had less total cash to cover his expenses and discretionary spending choices. Accordingly, we conclude that the circuit court properly interpreted and applied Wis. Stat. § 62.13(7) by comparing Gold's total cash receipts for each year at issue with his total cash receipts for the immediately preceding year.

## CONCLUSION

¶ 14. We conclude that because the circuit court's decision directly injured Gold's alleged interests in an appreciable manner, Gold is an aggrieved party who may appeal as of right. We also conclude that the circuit

court properly interpreted and applied WIS. STAT. § 62.13(7) by comparing the total cash payments Gold received for each year at issue with the total cash payments he received for the immediately preceding year. Accordingly, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.