RSIDUE, L.L.C., Plaintiff-Respondent,

v.

Michael R. MICHAUD, Defendant-Appellant.†

Court of Appeals

*No. 2005AP1299. Submitted on briefs January 19, 2006.
—Decided July 13, 2006.*

2006 WI App 164

(Also reported in 721 N.W.2d 718.)

† Petition to review denied 10/10/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thad M. Gegner* of *Freund Law Office*, Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edward J. Heiser, Jr., Kenneth R. Nowakowski* and *Lisa Arent* of *Whyte Hirschboeck Dudek, S.C.*, Milwaukee.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J.   Rsidue, L.L.C., purchased Michael Michaud's overdue credit card account and brought this action to collect the amount due on it. The circuit court ordered the entry of judgment against Michaud. He appeals, claiming the circuit court erred in denying his motion to dismiss Rsidue's complaint for failure to comply with the pleading requirements set forth in WIS. STAT. § 425.109(1) (2003–04).[1] We conclude that Rsidue is not a "creditor" within the meaning of the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Wisconsin Consumer Act and is thus not subject to the pleading requirements of § 425.109(1). Accordingly, we affirm.

## BACKGROUND

¶ 2. Household Bank of North America issued Michaud a credit card in 1991. He used the card and made regular payments on the account for several years. In 2001, however, Michaud defaulted by failing to timely make required payments on the account balance. He tried unsuccessfully to work out a payment plan with Household. Household sold Michaud's account in January 2003 to Collins Financial Services, Inc., which, in turn, sold the account to Rsidue. Rsidue's attorney sent Michaud a letter in March of 2003 telling him that Rsidue had acquired the credit card account from Household Bank, that the account balance stood at $10,912.02, and that he could cure his default on the account by remitting $2,353.01.

¶ 3. Rsidue filed this collection action in October 2003. It identified itself in an amended complaint as "the current holder" of the credit card account and sought to recover the following amounts plus additional interest, court costs and attorney fees:

| | | |
|---|---|---|
| Principal Balance | Purchases and/or cash advances, plus late fees less payments received through March 25, 2003 | $8,344.00 |
| Plus: Accrued Interest | Interest on Principal Balance from September 30, 2002 through March 17, 2004 at 23.90% | $2,930.27 |

| Less: | Payments | Payments received from March 25, 2003 through September 15, 2003 | ($0.00) |
| --- | --- | --- | --- |
| **Total Due** | | **Balance due as of March 17, 2004** | **$11,274.27** |

¶ 4. Michaud moved to dismiss Rsidue's amended complaint because it allegedly failed to comply with WIS. STAT. § 425.109(1)(d), which requires certain complaints to include "the figures necessary for computation of the amount" due the plaintiff. Rsidue argued in opposition to Michaud's motion that it was not subject to the pleading requirements of § 425.109 because it was not a "creditor" within the meaning of the Wisconsin Consumer Act (WCA), WIS. STAT. chs. 421–427. Alternatively, Rsidue claimed that its amended complaint complied with § 425.109(1). The circuit court accepted Rsidue's second argument and denied Michaud's motion to dismiss, concluding that Rsidue had "fully complied" with the requirements under WIS. STAT. § 425.109(1) as discussed in *Household Finance Corp. v. Kohl,* 173 Wis. 2d 798, 496 N.W.2d 708 (Ct. App. 1993). After a trial on damages, the court entered an order directing that judgment be entered in favor of Rsidue for $8,344.00. Michaud appeals.

## ANALYSIS

¶ 5. The principal question in this appeal is whether Rsidue's complaint must comply with the requirements of WIS. STAT. § 425.109(1). Because the pleading requirements under § 425.109(1) apply to a "complaint by a creditor," *see id.,* our answer to the question turns in large measure on whether Rsidue is a "creditor" within the meaning of the § 425.109. Thus, the question before us is one of statutory interpreta-

tion, a question we decide de novo. *See Gold v. City of Adams*, 2002 WI App 45, ¶ 7, 251 Wis. 2d 312, 641 N.W.2d 446.

¶ 6.   When interpreting a statute, we must assume that the legislature expressed its intent in the statutory language it chose to enact. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. A court must give statutory language its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. *Id.*, ¶ 45. If our analysis of the statutory language yields " 'a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.*, ¶ 46 (citation omitted).

¶ 7.   WISCONSIN STAT. § 425.109(1) provides, among other things, that a *"complaint by a creditor* to enforce any cause of action arising from a consumer credit transaction shall include . . . [t]he actual or estimated amount . . . that the creditor alleges he or she is entitled to recover and the figures necessary for computation of the amount . . . ." Section 425.109(1)(d) (emphasis added). For purposes of the WCA, which includes WIS. STAT. ch. 425, a "creditor" is "a merchant who regularly engages in consumer credit transactions or in arranging for the extension of consumer credit by or procuring consumer credit from 3rd persons." WIS. STAT. § 421.301(16). Thus, under the controlling "special" definition of the term, an entity is a "creditor" if it is a "merchant"[2] and "regularly engages" in at least one of

[2] "Merchant" is also a statutorily defined term. *See* WIS. STAT. § 421.301(25). Because we conclude that Rsidue does not

three activities: (a) "consumer credit transactions"; (b) "arranging for the extension of consumer credit by" third persons; or (c) "procuring consumer credit from" third persons.

¶ 8. Rsidue does not dispute that the obligation upon which it pursued Michaud arose out of a "consumer credit transaction." It also does not dispute that the original owner or creator of the credit card account, Household Bank, "regularly engages in consumer credit transactions" and is thus a "creditor" within the meaning of WIS. STAT. § 425.109(1). Finally, neither Michaud nor Rsidue challenges the circuit court's description of Rsidue as being "in the business of purchasing consumer debt and acquiring the right to pursue the debtors for the past due balances."

¶ 9. Rsidue contends that WIS. STAT. § 425.109(1) does not apply to its complaint. Notwithstanding the fact that it seeks in this action to enforce an obligation arising from a consumer credit transaction, Rsidue maintains it does not have to comply with § 425.109(1) because its business activities do not come within those that would render it a "creditor" under the WCA. Therefore, according to Rsidue, the pleading requirements at issue, which apply only to a "complaint by a creditor," do not apply to Rsidue's complaint. We thus consider whether the record establishes that Rsidue regularly engages in any of the three activities that would render it a creditor within the meaning of WIS. STAT. §§ 421.301(16) and 425.109(1).

¶ 10. We first address whether Rsidue can be said to "regularly engage[] in consumer credit transactions." See § 421.301(16). A "consumer credit transaction" is a

_____

regularly engage in one of the three activities that would make it a "creditor," we need not decide whether Rsidue is a "merchant."

transaction whereby "real or personal property, services or money is acquired ["for personal, family or household purposes," *see* WIS. STAT. § 421.301(17)] on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed." Section 421.301(10). A consumer credit transaction can include a "consumer credit sale," whereby goods or services are sold on credit payable in installments or subject to a finance charge. *See* § 421.301(9). It can also include a "consumer loan," which is a loan made by a lender that is either subject to a finance charge or is repayable in installments. *See* § 421.301(12).[3]

¶ 11. Rsidue contends that, because it neither sells goods or services to consumers on credit nor otherwise lends money to consumers, it does not "engage," regularly or otherwise, "in consumer credit transactions." We agree. We conclude that Rsidue does not meet the first definitional criterion for being a "creditor," and we note that Michaud does not argue to the contrary. Similarly, there appears to be no dispute that Rsidue also does *not* regularly engage "in arranging for the extension of consumer credit by" third persons. *See* WIS. STAT. § 421.301(16). Thus, only the final activity specified in § 421.301(16) remains a possibility—regular engagement in procuring consumer credit from third persons.

¶ 12. Michaud contends that Rsidue meets the third definitional criterion of WIS. STAT. § 421.301(16) because, in acquiring defaulted consumer credit obligations from creditors, Rsidue "regularly engages in . . . procuring consumer credit from" third persons as set

---

[3] Michaud's credit card account appears to have been a "consumer loan."

forth in Wis. Stat. § 421.301(16). From the outset, we note that we find Michaud's interpretation somewhat strained. We question whether buying and attempting to collect bad debts would commonly or ordinarily be referred to as "procuring consumer credit." The term, "procuring consumer credit," seems to be more applicable to the activities of a loan broker or other intermediary, who does not lend money him or herself but who brings together prospective borrowers and willing lenders.

¶ 13. The applicable statutory definition of "credit" confirms our view that Michaud's proffered interpretation is unreasonable. " 'Credit' means the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis." Wis. Stat. § 421.301(14). Based on the record before us, we cannot conclude that Rsidue either grants consumers the rights "to defer payment of debt, to incur debt" or to purchase property or services on "a time price basis," or that it procures these rights from others on behalf of consumers. Quite simply, the rights in question are granted by other entities, such as Household Bank, before Rsidue even enters the picture. Rsidue cannot be said to be "procuring consumer credit" granted by its predecessors in interest.

¶ 14. We conclude that what Rsidue regularly procures from creditors is not consumer credit but the obligations of consumers to repay debts arising from credit previously granted to them by others. We therefore agree with Rsidue that it does not regularly engage in "procuring consumer credit" from third persons. Accordingly, we also conclude that, because Rsidue does not regularly engage in any of the activities that would render it a "creditor" within the meaning of Wis. Stat. §§ 421.301(16) and 425.109(1), the pleading require-

ments set forth in the latter statute for a "complaint by a creditor" do not apply to the complaint in this action.

¶ 15. Our inquiry regarding the scope of Wis. STAT. § 425.109(1) is not at an end, however. Michaud argues that we implicitly held in *Household Finance Corp. v. Kohl*, 173 Wis. 2d 798, that the pleading requirements of § 425.109(1) apply to complaints filed by "debt purchasers" like Rsidue regardless of whether they are creditors. The consumers in *Kohl* purchased a computer on credit from American TV, which in turn assigned its rights under the credit agreement to Household Finance Corporation, the plaintiff in the action. *Id.* at 799. Without discussing whether the plaintiff was a "creditor" within the meaning of Wis. STAT. § 421.301(16), we applied the pleading requirements of § 425.109(1) to Household's complaint and found it lacking. *See id.* at 802–03.

¶ 16. Michaud would have us conclude from the lack of any mention in *Kohl* of the nature of the plaintiff's business activities that we necessarily decided that *any* entity that acquires a consumer credit obligation and commences a legal action against the consumer to collect it becomes subject to the pleading requirements of Wis. STAT. § 425.109(1). We cannot make the leap Michaud requests. We did not discuss in *Kohl* whether Household Finance was a "creditor" to whom the statutory pleading requirements apply because Household Finance apparently did not claim, as Rsidue does here, that it was not a creditor subject to the requirements of § 425.109(1).

¶ 17. There is a more important reason, however, that we cannot rely on our silence in *Kohl* regarding whether the plaintiff in that case was a "creditor" as a basis for now concluding that the requirements of Wis. STAT. § 425.109(1) apply to all complaints in actions to

594

enforce obligations arising from consumer credit transactions. To do so would require us to ignore the words "by a creditor" in § 425.109(1), thereby reading the statute as if the legislature had directed the pleading requirements to apply to every "complaint []
to enforce any cause of action arising from a consumer credit transaction." That, however, is not the language the legislature chose to enact. It may well be, as Michaud also argues and we discuss below, that the pleading requirements set forth in § 425.109(1) should apply, as a matter of public policy, whenever *any* plaintiff sues a consumer to enforce an obligation arising out of a consumer credit transaction. Such a conclusion, however, finds no support in the language of § 425.109(1) as presently enacted and is thus beyond our reach.

¶ 18. Michaud next contends that Rsidue should be held to the pleading requirements of WIS. STAT. § 425.109(1) because it is an assignee that succeeded to all of the rights—and liabilities—of a "creditor" in a consumer credit transaction.[4] Michaud seeks to rely on WIS. STAT. § 422.407(1), which provides that "an assignee of the rights of a creditor is subject to all claims and defenses of the customer against the assignor arising out of the transaction." Section 422.407(1). In Michaud's view, this provision means that an assignee "steps into the [creditor's] shoes" for all purposes relating to the WCA, and thus, the assignee becomes subject to the pleading requirements imposed on a creditor under § 425.109(1), regardless of whether the assignee is itself a creditor.

---

[4] As we have explained, Rsidue does not dispute that it is the assignee of a "creditor."

¶ 19. We reject this argument as well. Quite simply, WIS. STAT. § 425.109(1) does not create any "claims" or "defenses" for consumers; the statute imposes pleading requirements on creditors. Thus, the statute deals with matters of procedure, not substantive legal principles. "Claims and defenses" are substantive legal theories, which, if the necessary facts are established, allow a consumer to avoid liability on a consumer credit obligation or to recover offsetting damages from the creditor. When a defendant prevails on a "claim" or "defense," the defendant becomes entitled to a judgment on the merits in the defendant's favor, or, at a minimum, to the entry of a smaller judgment in the creditor's favor than what was sought. By contrast, although a failure to comply with the pleading requirements under § 425.109(1) might hinder a creditor's ability to obtain a judgment against a consumer, *see* § 425.109(3), the creditor could typically cure such a pleading deficiency by amending the complaint or re-filing the action.

■

¶ 20. We thus conclude that WIS. STAT. § 422.407(1) has no bearing on the present dispute.[5]

---

[5] Rsidue advances another reason that WIS. STAT. § 422.407(1) does not render WIS. STAT. § 425.109(1) applicable to its complaint. It asserts that the underlying obligation in this case is a "consumer loan," more specifically, a consumer loan that is *not* an "interlocking consumer loan." *See* WIS. STAT. §§ 421.301(12) (defining "consumer loan") and 422.408(3) (defining "interlocking consumer loan"). Rsidue argues that, because § 422.407(1) expressly does not apply to a "consumer loan which is not an interlocking consumer loan," Rsidue is not, by virtue of the statute, subject to claims and defenses Michaud might have against Household Bank. Because we conclude that § 425.109(1) does not create a "claim or defense," we need not decide whether the obligation Rsidue sought to enforce comes within the exception to the applicability of § 422.407(1).

The legislature certainly could have extended the pleading requirements of WIS. STAT. § 425.109(1) to complaints filed by assignees of creditors. It might easily have done so by simply inserting "or its assignee" at the end of the prepositional phrase "by a creditor." However, because the legislature chose to include the "by a creditor" limitation without further extension or modification, we cannot conclude the statute imposes special pleading requirements on Rsidue because of its status as a creditor's assignee.

¶ 21. Finally, in addition to making the statutory arguments discussed above, Michaud asks us to conclude for public policy reasons that WIS. STAT. § 425.109(1) applies to Rsidue's complaint. He notes that we said the following in *Kohl*:

> It would be contrary to the philosophy of the WCA to conclude that [Household Finance Corp.]'s complaint is sufficient because it meets the requirements of notice pleadings under the Wisconsin Rules of Civil Procedure. The philosophy of the WCA is to give as much notice to consumers as is consistent with 'a realistic credit economy.' Consumers are not to be forced to conduct expensive and time-consuming discovery to learn how the creditor computed the amount due.

*Kohl*, 173 Wis. 2d at 801.

¶ 22. According to Michaud, if we hold that WIS. STAT. § 425.109(1) is inapplicable to actions against consumers arising out of consumer credit transactions that are brought by creditors' assignees, this would create a loophole in the statute that permits entities like Rsidue to pursue consumers in a manner that we previously concluded in *Kohl* is contrary to the "philosophy" of the WCA. He asks us to not create such a loophole, or, perhaps more correctly stated, to close a loophole the legislature inadvertently created when it

597

enacted § 425.109(1). It is not our role, however, to render an interpretation of the statute that we may believe better comports with the philosophy of the WCA when there is no textual support for the interpretation, either in the statute under consideration or any others that Michaud has brought to our attention.

¶ 23. The United States Supreme Court, when asked in *Crooks v. Harrelson*, 282 U.S. 55 (1930), to disregard the plain language of a federal statute in order to avoid an allegedly absurd result, explained a court's proper response when confronted with a statute whose language produces an arguably undesirable consequence:

> Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts.

*Id.* at 60 (citations omitted).

■

¶ 24. If Justices of the Supreme Court are not exempt from the need to exercise "great caution and circumspection in order to avoid usurpation" of legisla-

tive power, neither are the members of this court. Accordingly, even though we may sympathize with Michaud's belief that our conclusion regarding the limited scope of Wis. Stat. § 425.109(1) is not in keeping with the public policy underlying the WCA, we are not free to rewrite the statute in the way we believe the legislature should have written it, or might have written it, had the present circumstances been brought to the legislature's attention.

## CONCLUSION

¶ 25.   For the reasons discussed above, we conclude Rsidue is not a "creditor" within the meaning of Wis. Stat. §§ 421.301(16) and 425.109(1). The latter statute, therefore, imposes no special pleading requirements on Rsidue's complaint and the circuit court did not err in denying Michaud's motion to dismiss.[6]

*By the Court.*—Order affirmed.

---

[6] Rsidue also argues that its amended complaint complied with Wis. Stat. § 425.109(1)(d), and, further, that § 425.109(3) prohibits only the entry of a default judgment on an insufficient complaint but does not affect a plaintiff's ability to obtain a judgment upon proper proof of the defendant's obligation and the amount due. Given our conclusion that § 425.109(1) does not apply to Rsidue's complaint, we do not address Rsidue's alternative rationales for sustaining the entry of a judgment against Michaud in this action.