STATE of Wisconsin, Plaintiff-Respondent,†

v.

William DINKINS, Sr., Defendant-Appellant.

Court of Appeals

*No. 2009AP1643–CR. Oral argument April 20, 2010.
—Decided November 18, 2010.*

2010 WI App 163

(Also reported in 794 N.W.2d 236.)

† Petition for Review granted 3-16-11.

591

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender. There was oral argument by *Steven D. Phillips*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *James M. Freimuth*.

Before Vergeront, P.J., Lundsten and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. William Dinkins was convicted of first-degree sexual assault of a child and is therefore subject to the requirements of Wisconsin's sex offender registration law. *See* WIS. STAT. § 301.45(1d)(b) and (1g)(a) (2007–08).[1] This appeal concerns his conviction for failing to provide the Department of Corrections (department) "the address at which [he] . . . w[ould] be residing" at least ten days prior to his release from prison, pursuant to § 301.45(2)(a)5. and (e)4.

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 2. Dinkins' primary contention, as we construe it, is that he could not be convicted of failing to provide his post-release address as required under Wis. Stat. § 301.45(2)(a)5. because he could not locate post-release housing, and thus did not have an "address at which [he] . . . w[ould] be residing" that he could provide to the department. In response, the State argues that Dinkins could have complied with the address reporting requirement by providing the nearest address of any place he planned to sleep, including, for example, a park bench.

¶ 3. We agree with Dinkins. Contrary to the State's position, the term "residing" in the address reporting requirement plainly does not encompass a park bench —or a heating grate, bush, highway underpass, or other similar on-the-street location, for that matter. Reading the address reporting requirement in conjunction with the requirement that prisoners nearing the expiration of their sentence provide this information *prior to* their release, we conclude that the statute contemplates the prisoner supplying the address of a location where the prisoner could reasonably predict he would actually be able to "resid[e]." We reject the State's argument that a park bench or similar on-the-street location is such a location. We therefore reverse the judgment of conviction and the order denying postconviction relief.

¶ 4. At the same time, we acknowledge that this case highlights an apparent unintended gap in the address reporting requirement of the sex offender registration law. As is apparent from our discussion below, the statute contains at least one questionable assumption. It seemingly assumes that all soon-to-be-released prisoners are able, in advance of leaving prison, to identify a location at which they may "resid[e]." Fixing or improving on this gap is beyond our limited authority, and we encourage the legislature to address it.

594

## BACKGROUND

¶ 5. William Dinkins was convicted in February 1999 of first-degree sexual assault of a child and sentenced to a prison term of ten years. As noted, Dinkins' offense required him to register as a sex offender upon his release from prison, *see* WIS. STAT. § 301.45(1d)(b) and (1g)(a), and to provide required information for the sex offender registry, including the address at which he would be residing, pursuant to § 301.45(2)(a). Dinkins was scheduled to be released from prison on the expiration date of his sentence, July 20, 2008. Thus, he would not have been on supervision upon his release. Under § 301.45(2)(d), an offender scheduled for release from prison must report information required under § 301.45(2)(a) for the sex offender registry "no later than 10 days before being released from prison."

¶ 6. On June 2, 2008, a prison social worker, Myra Smith, informed Dinkins that he was required under the sex offender registration statute to provide the address at which he would be residing upon his release. Later that day, parole agent Lisa Gallitz informed Dinkins that he could be charged with a crime if he failed to provide required information for the sex offender registry. Dinkins told Gallitz that he planned to live with his daughter, Brianna Dinkins, but he did not know her address and her phone had been disconnected. Dinkins told Smith that he had written to Brianna several times and had not received an answer from her. Gallitz made repeated efforts in June and July to locate Brianna using public directories, court records and family interviews. Finally, on July 18, Gallitz made contact with Brianna, who informed Gallitz that, while she wanted her father to live with her, her fiancé was opposed to it, she had a small child, and her landlord would not allow him to live there.

¶ 7. In Smith's view, Dinkins made some continued effort between June 3 and the July 20 expiration date of his sentence to find a place to live. The circuit court later found that Dinkins had "attempted to comply with the [address reporting requirement of the] statute, but ha[d] been unable to find housing for himself upon release." The State did not challenge this finding in briefs.[2]

¶ 8. On July 17, 2008, three days prior to his scheduled release date, a complaint was filed charging Dinkins with failing to provide required information to the sex offender registry. Dinkins was transferred the following day from Oshkosh Correctional Institution to Dodge County Jail, where he remained during the trial court proceedings. Dinkins filed three motions to dismiss the charge. Following a preliminary hearing held on July 31, the trial court denied Dinkins' motions to dismiss. A trial was held to the court based on the testimony and exhibits submitted at the preliminary hearing, and Dinkins was found guilty of the charged offense. The court withheld sentence and placed him on probation for thirty months on condition that he serve ninety days in jail.

¶ 9. Dinkins filed a motion for postconviction relief pursuant to WIS. STAT. § 974.02 and WIS. STAT. RULE 809.30(2)(h). Dinkins contended that the offense of failure to report information to the sex offender registry under WIS. STAT. § 301.45(2)(a) requires proof that the defendant had actual knowledge of the information that he was required to provide—knowledge Dinkins lacked because he did not know where he would be living upon his release. Dinkins further contended that failure to construe § 301.45(2)(a) to require proof of knowledge of

---

[2] At oral argument, the State tentatively suggested that this finding was clearly erroneous. To the extent that the State challenges the court's finding, we conclude that it is not clearly erroneous.

the required information would violate his right to substantive due process, and render the statute impermissibly vague. Dinkins asked the court to vacate the judgment of conviction, or, in the alternative, to order a new trial on grounds that the real controversy had not been fully tried because neither the parties nor the court had addressed whether Dinkins had actual knowledge of the required information. The court denied the motion. Dinkins appeals.

## DISCUSSION

### Standard of Review and Principles of Statutory Interpretation

¶ 10. This case requires us to interpret WIS. STAT. § 301.45(2)(a), which mandates that persons subject to the sex offender registration law provide certain information, including the address where the offender is residing or will be residing. Statutory interpretation presents a question of law that an appellate court reviews de novo. *State v. Kleser*, 2010 WI 88, ¶ 36, 328 Wis. 2d 42, 786 N.W.2d 144.

¶ 11. "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain from the statutory language, we ordinarily stop the inquiry and apply that meaning. *Id.*, ¶ 45. Non-technical words and phrases not defined within the statutory scheme are usually given their common, ordinary, and accepted

meaning. *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. When interpreting a statute, "the court is not at liberty to disregard [the statute's] plain, clear words." *Id.*

■■

¶ 12. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole." *Id.*, ¶ 49. "[A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." *Id.*

*Information Reporting Requirement*
*of the Sex Offender Registration Law*

¶ 13. Wisconsin's sex offender registration law, WIS. STAT. § 301.45, is remedial in nature, not punitive, and its purposes are to protect the public and assist law enforcement by keeping updated information about registrants. *State v. Bollig*, 2000 WI 6, ¶¶ 21–22, 232 Wis. 2d 561, 605 N.W.2d 199. The information all persons subject to the registration law must provide to the registry is set forth in § 301.45(2)(a), and includes "[t]he address at which the person is or will be residing."[3] Section 301.45(2)(a)5.

---

[3] Under WIS. STAT. § 301.45(2)(a), the sex offender registry shall include the following information with respect to each person:

1. The person's name, including any aliases used by the person.

¶ 14. WISCONSIN STAT. § 301.45(2)(e) specifies the time by which the required information must be pro-

2. Information sufficient to identify the person, including date of birth, gender, race, height, weight and hair and eye color.

3. The statute the person violated that subjects the person to the requirements of this section, the date of conviction, adjudication or commitment, and the county or, if the state is not this state, the state in which the person was convicted, adjudicated or committed.

4. Whichever of the following is applicable:

a. The date the person was placed on probation, supervision, conditional release, conditional transfer or supervised release.

b. The date the person was or is to be released from confinement, whether on parole, extended supervision or otherwise, or discharged or terminated from a sentence or commitment.

c. The date the person entered the state.

d. The date the person was ordered to comply with this section.

5. The address at which the person is or will be residing.

6. The name of the agency supervising the person, if applicable, and the office or unit and telephone number of the office or unit that is responsible for the supervision of the person.

6m. [created by 2009 WI Act 131, effective March 4, 2010] The name or number of every electronic mail account the person uses, the Internet address of every Web site the person creates or maintains, every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains. The

vided.[4] A person like Dinkins who is about to be released from prison at the expiration date of his

department may not place the information provided under this subdivision on any registry that the public may view but shall maintain the information in its records on the person. This subdivision applies only to an account, Web site, Internet address, or Internet profile the person creates, uses, or maintains for his or her personal, family, or household use.

8. The name and address of the place at which the person is or will be employed.

9. The name and location of any school in which the person is or will be enrolled.

9m. For a person covered under sub. (1g)(dt), a notation concerning the treatment that the person has received for his or her mental disorder, as defined in s. 980.01(2).

10. The most recent date on which the information in the registry was updated.

[4] WISCONSIN STAT. § 301.45(2)(e) provides in full:

The department of health services shall provide the information required under par. (c) or the person subject to sub. (1g) shall provide the information required under par. (d) in accordance with whichever of the following is applicable:

1. Within 10 days after the person is placed on probation, supervision, aftercare supervision, conditional release or supervised release.

1m. If the person is being released from a prison sentence and placed on parole or extended supervision, before he or she is released.

2. If the person is on parole, extended supervision, probation, or other supervision from another state under s. 304.13(1m), 304.135, 304.16, or 938.988, before the person enters this state.

600

sentence and will not be on supervision must provide the information "no later than 10 days before being released from prison." Section 301.45(2)(e)4.[5] Failure to comply with this requirement may result in criminal penalties. *See* § 301.45(6)(a).

---

2m. If the person is registered as a sex offender in another state or is registered as a sex offender with the federal bureau of investigation under 42 USC 14072, within 10 days after the person enters this state to take up residence or begin school, employment or his or her vocation.

2t. If the person has been found to have committed a sex offense by another jurisdiction and subd. 2m. does not apply, within 10 days after the person enters this state to take up residence or begin school, employment or his or her vocation.

3. No later than 10 days before the person is terminated or discharged from a commitment.

4. If the person is being released from prison because he or she has reached the expiration date of his or her sentence, no later than 10 days before being released from prison.

5. If subd. 1., 1m., 2., 2m., 2t., 3. or 4. does not apply, within 10 days after the person is sentenced or receives a disposition.

[5] An administrative rule provides that the department, agent, or court of jurisdiction must notify a person registering for the first time of his obligation to provide all of the information required by the sex offender registration law at least thirty days prior to a condition requiring registration has been met. *See* WIS. ADMIN. CODE § JUS 8.07(1) and (2). However, failure of the department, agent or court to provide notification to the prospective registrant is not a defense to the crime of failing to provide all of the information required by the sex offender registration law. WIS. ADMIN. CODE § JUS 8.11(3).

¶ 15. All sex offender law registrants must provide the required information to the department on an annual basis. WIS. STAT. § 301.45(3)(b). In addition, whenever any of the required information changes, registrants must provide this updated information to the department within ten days after the change occurs. Section 301.45(4)(a).

## Analysis

■

¶ 16. On appeal, Dinkins contends that the offense of failure to provide information to the sex offender registry requires proof that the defendant had knowledge of the information he was compelled to provide.[6] Although Dinkins speaks in terms of his lack of knowledge, we understand his substantive argument to be that he could not have supplied the address where he would be *residing* because he did not know of such a location.[7] Thus, we construe Dinkins' "knowledge" ar-

---

[6] We note that Dinkins frames his appeal as a challenge to the sufficiency of the evidence, contending that the crime of failure to provide information to the sex offender registry requires proof that the defendant had actual knowledge of the information not provided, and that the State did not submit proof of this fact. However, this is not a classic sufficiency-of-evidence case, and is instead more akin to *State v. Perry*, 215 Wis. 2d 696, 707, 573 N.W.2d 876 (Ct. App. 1997), where the facts were undisputed and the conviction turned on the trial court's interpretation of the statute. *See State v. Schulpius*, 2006 WI App 263, ¶¶ 10–12, 298 Wis. 2d 155, 726 N.W.2d 706 (discussing *Perry*). As in *Perry*, our task here is to interpret the statute.

[7] Dinkins makes two additional arguments. First, he contends that any construction of WIS. STAT. § 301.45(2)(a) that does not require proof of knowledge of the information to be provided would violate his right to substantive due process by

gument to mean, in essence, that a prisoner nearing expiration of sentence cannot be convicted for failing to provide under WIS. STAT. § 301.45(2)(a)5. an "address at which [he] . . . w[ould] be residing" upon release if he has been unable find a location where one could "resid[e]" within the meaning of the statute.

¶ 17. The State counters that Dinkins, like everyone, knows that he must sleep somewhere, and WIS. STAT. § 301.45(2)(a)5. and (e)4. merely requires incarcerated sex offenders to identify and report the address or nearest address of the place where they plan to sleep at least ten days prior to their release—even if the place is a park bench or similar on-the-street location. The State asserts that such a location is an "address" within the meaning of § 301.45(2)(a)5., citing several dictionary definitions of "address." In the State's view, § 301.45(2)(a)5. is reasonably construed as requiring every incarcerated sex offender approaching his release date "to report the 'address' where he expects to live and sleep—whether by reference to an actual street address or to a neighboring street address when the sex offender, like Dinkins, ostensibly claims he may be 'homeless' due to a professed inability to make other living arrangements." The State maintains that such an interpretation is required by the policy objectives of the statute, which are to protect the public and to assist law enforcement in tracking registered sex offenders. *Bollig*, 232 Wis. 2d 561, ¶ 20.

---

holding him criminally responsible for an act that he was incapable of performing, i.e., to provide the address of the place he would be residing when he had not located housing. Second, he contends that the State's construction of the statute would violate his right to procedural due process by rendering the statute impermissibly vague as applied to him. We decline to address these arguments because we reverse on other grounds set forth in this opinion.

¶ 18. Assuming without deciding that park benches, and other similar on-the-street locations have an "address" within the meaning of WIS. STAT. § 301.45(2)(a)5., we nonetheless conclude that a park bench or other on-the-street location is not a place where one may "resid[e]" within the meaning of the statute. Further, reading the address reporting requirement in conjunction with the requirement that prisoners nearing the expiration of their sentence provide this information *prior to* their release, § 301.45(2)(e)4., we conclude that the address provided must be one at which the soon-to-be-released prisoner can reasonably predict he will actually be able to "resid[e]."

¶ 19. The term "residing" is not defined within WIS. STAT. ch. 301. In the absence of a statutory definition, we give the term "residing" its ordinary and accepted meaning, as provided by a recognized dictionary. *See Landwehr v. Landwehr*, 2006 WI 64, ¶ 16, 291 Wis. 2d 49, 715 N.W.2d 180. One popular dictionary defines the term's root form, "reside," as: "To live in a place for a permanent or extended time." WEBSTER'S II NEW COLLEGE DICTIONARY 943 (1995). Another, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (1993), states that to "reside" means "to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile." A third, FUNK & WAGNALLS NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1072 (2000), defines "reside" as "[t]o dwell for a considerable time; make one's home; live."[8]

---

[8] The State's brief does not address the meaning of the word "residing" in WIS. STAT. § 301.45(2)(a)5. When asked for an interpretation of "reside" at oral argument, the State asserted that a place where one may "reside" includes any place where a person may sleep. The State did not cite any authority for this

¶ 20. Based on the foregoing, we conclude that "resid[e]" as the term is used in the registry statute means to live in a location for an extended period of time. Under this definition, a park bench—or, for that matter, a heating grate, bush, or highway underpass—is plainly not a place where one may "resid[e]." At any given time, a particular park bench, heating grate, bush or highway underpass may be occupied by another person. In addition, local authorities may prevent a person from actually staying at many on-the-street locations by asking them to "move along."[9] For these very practical reasons, such a location is not a place where one may live for an extended period of time.

¶ 21. Moreover, when the address reporting requirement is read in conjunction with the mandate that prisoners provide this and other required information to the department prior to their release, it is plain that the address provided by a soon-to-be-released prisoner like Dinkins must be one at which the prisoner can *reasonably predict* he will be able to reside. *See Kalal,* 271 Wis. 2d 633, ¶ 49 (statute's context and its relationship to other provisions are relevant to a plain-meaning interpretation of the statute). Unlike registrants not on supervision living in the community who may report a change of address ten days *after* the change occurs, Wis. Stat. § 301.45(4)(a), soon-to-be-released prisoners nearing the expiration of their sentence must *predict* where

position, but argued that such an interpretation was necessary to achieve the policy objectives of the registration law.

[9] The issue of whether and under what circumstances a person who has no other place to stay may be removed from a public place is beyond the scope of this opinion. We note only that the fact that authorities may seek to remove a sleeping person from a public place is a practical obstacle to a person "residing" at many on-the-street locations.

they will be residing and provide the address of this location ten days *prior to* their release, § 301.45(2)(e)4. A park bench or similar on-the-street location is not a place where a person can reasonably expect they will be able to stay for even one night for the reasons provided in the preceding paragraph. Moreover, a prisoner is less able than most to predict whether he will be able to stay at a particular on-the-street location (assuming he can identify such a location from prison) because prisoners typically lack the means to determine whether a particular on-the-street location will be available, or instead will be occupied.

¶ 22. Further, we reject the State's view that Wis. Stat. § 301.45(2)(a)5. and (e)4. must be read in a manner that allows prosecution of persons in Dinkins' position because the legislature has placed a high priority on tracking the whereabouts of just-released offenders. In fact, the statutory scheme is at best inconsistent with regard to tracking just-released offenders; we observe that § 301.45(4) permits the same prisoner who the State insists may be prosecuted for failure to provide an address *before* his release to change his address *after* his release without informing the department of his new location for ten days.[10]

---

[10] Wisconsin Stat. § 301.45(4) provides, as pertinent:

(a) Except as provided in par. (b), whenever any of the information under sub. (2)(a) changes, the person shall provide the department with the updated information within 10 days after the change occurs.

(b) If the person is on parole or extended supervision and the person knows that any of the information under sub. (2)(a)5. will be changing, the person shall provide the department with the updated information before the change in his or her address occurs. If the

¶ 23. Courts from other jurisdictions construing the related term "residence" in address reporting requirements of their sex offender registration laws have likewise concluded that not every place where one sleeps is a "residence." In *State v. Pickett*, 975 P.2d 584, 586–87 (Wash Ct. App. 1999), a Washington appellate court overturned the conviction of a person who the trial court found to be homeless and living on the streets for failing to report his "residence address" as required by the state's sex offender registration law. Relying on WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY's definition of "residence," the Washington court observed that the term "connote[s] some permanence or intent to return to a place," and concluded that a person who is homeless and living on the streets by definition lacks a place of residence. *Pickett*, 975 P.2d at 586–87 & n.6. The court specifically rejected the state's argument in favor of an expanded meaning of "residence" that included "under [a] bridge." *Id.* at 587. The Maryland Supreme Court in *Twine v. State*, 910 A.2d 1132, 1140–41 (Md. 2006), similarly held that the requirement that an offender register a change of "residence" with the state after he was evicted and became homeless did not apply because he lacked a "residence" as the term is commonly understood. *See also Commonwealth v. Wiligus*, 975 A.2d 1183, 1187–88 (Pa. Super. Ct. 2009) (defendant's homeless existence precluded conviction for not registering his "residence").

person is on parole or extended supervision and any of the information under sub. (2)(a)5. changes but the person did not know before the change occurred that his or her address would be changing, the person shall provide the department with the updated information within 24 hours after the change in his or her address occurs.

¶ 24. Because it is undisputed that Dinkins lacked an address at which he could have reasonably predicted he would have been able to "reside," we therefore conclude that he could not be convicted of failing to comply with the address reporting requirement.[11]

¶ 25. The State contends that an interpretation of WIS. STAT. § 301.45(2)(a)5. and (e)4. that precludes prosecution of persons in Dinkins' position would allow soon-to-be-released sex offenders to dodge the address reporting requirement by claiming that they cannot find housing. The State may be right that some limited number of prisoners will employ this strategy. Testimony from the preliminary hearing in this case, however, suggests that the number of prisoners like Dinkins subject to the registration law who will not be on supervision upon release (and cannot locate post-release housing) is relatively small. Ten years after extended supervision was made mandatory by the Truth-in-Sentencing law, the number of sex offenders sentenced under the old parole regime is declining. We can safely assume that many of these offenders will be either released on parole or committed to a secure treatment facility under WIS. STAT. ch. 980. In this case, probation officer Gallitz testified that she spoke personally with the Secretary of the Department of Corrections about Dinkins' situation, which suggests the uniqueness of Dinkins' status. As we have seen, however, the plain language of § 301.45(2)(a)5. and (e)4.

[11] At the preliminary hearing, parole agent Gallitz testified that she had discussed with her supervisor the possibility of Dinkins living at a homeless shelter in Dane or Dodge Counties. We do not reach the issue of whether a homeless shelter is a place at which one may "resid[e]" within the meaning of WIS. STAT. § 301.45(2)(a)5.

does not permit prosecution of a soon-to-be-released prisoner for failure to fulfill the address reporting requirement when the prisoner does not have an address at which he can reasonably predict he will be able to reside upon his release. And we lack the authority to improve on the statutory scheme. *Rsidue, L.L.C. v. Michaud*, 2006 WI App 164, ¶ 24, 295 Wis. 2d 585, 721 N.W.2d 718 ("[W]e are not free to rewrite [a] statute in the way we believe the legislature should have written it, or might have written it, had the present circumstances been brought to the legislature's attention.").[12]

---

[12] We acknowledge that portions of our interpretation of Wis. Stat. § 301.45(2)(a)5. may be read to suggest that no registered sex offender—whether about to be released like Dinkins or living in the community on or off of supervision—who lacks an "address at which [he] is or will be residing" may be prosecuted for failing to comply with the address reporting requirement. As explained above, § 301.45(2)(a) sets forth the information that the sex offender registry must contain about every registrant, including "[t]he address at which the person is or will be residing" under subparagraph (5). Every registrant must therefore provide to the department "[t]he address at which [he] is or will be residing," whether annually under § 301.45(3)(b) or at some other time specified by statute. Under our interpretation of § 301.45(2)(a)5., which is compelled by the statute's plain language, it would thus appear that any registrant who lacks an "address at which [he] is or will be residing" cannot be prosecuted for failing to comply with the address registration requirement.

Thus, the statute, as written, fails to ensure that persons who lack an "address at which [they are] or will be residing"—i.e., homeless registrants—provide information about their whereabouts to the department. Other states have adopted comprehensive reporting schemes to allow for the tracking of homeless registrants. *See, e.g.* Minn. Stat. § 243.166 (3a)(e) (2010) (requiring persons who lack a "primary address" to "report in person on a weekly basis to the law enforcement

If there is a remedy for the problem we have identified, that remedy must come from the legislature. *See Commonwealth v. Bolling*, 893 N.E.2d 371, 378 (Mass. App. Ct. 2008) ("The difficulties of fitting homeless persons into the statutory scheme are [noted by other courts]. However, it is not our proper role or function to rewrite the statute to address what may appear to be gaps in its scope or practical operation.").

## CONCLUSION

¶ 26. In sum, because Dinkins did not have an address at which he could have reasonably predicted he would have been able to "reside," he could not be convicted for failing to comply with the address reporting requirement of Wis. Stat. § 301.45(2)(a)5. Accordingly, we reverse the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order reversed.

authority with jurisdiction in the area where the person is staying"); 730 Ill. Comp. Stat. 150/3(a) (2010) ("Any person who lacks a fixed residence must report weekly, in person, with the sheriff's office of the county in which he or she is located in an unincorporated area, or with the chief of police in the municipality in which he or she is located."). This gap in the statutory scheme may also require a legislative fix.