STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

William DINKINS, Sr., Defendant-Appellant.

Supreme Court

*No. 2009AP1643–CR. Oral argument September 6, 2011.
—Decided March 13, 2012.*

2012 WI 24

(Also reported in 810 N.W.2d 787.)

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant, there was a brief and oral argument by *Steven D. Phillips,* assistant state public defender.

¶ 1. ANN WALSH BRADLEY, J. The State seeks review of a published decision of the court of appeals that reversed a judgment and order of the circuit court finding William Dinkins, Sr. guilty of knowingly failing to comply with the sex offender registration statute.[1] That statute required Dinkins to provide the Department of Corrections (DOC) with "the address at which [he] . . . will be residing" at least ten days prior to his release from prison.[2] The circuit court found that Dinkins attempted to comply with the registration requirements but was unable to find housing for himself prior to his release. Nevertheless, relying on the testimony adduced at the preliminary hearing, the circuit court adjudged Dinkins guilty of a Class H felony.

¶ 2. The State asserts that the court of appeals erred in reversing the circuit court's judgment. It contends that homelessness is not a defense to failing to comply with the registration requirements and that Dinkins could have complied with the statute by listing a park bench or other on-the-street location as the place he would be residing.

---

[1] *State v. Dinkins,* 2010 WI App 163, 330 Wis. 2d 501, 794 N.W.2d 236 (reversing judgments of the circuit court for Dodge County, Judge Andrew P. Bissonnette, presiding).

[2] Wisconsin Stat. §§ 301.45(2)(a)5., (2)(d), and (2)(e)4. All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

¶ 3. We agree with the State that homeless registrants are not exempt from registration requirements and that homelessness is not a defense to failing to comply with the registration requirements. However, we disagree that Dinkins was capable of complying with the statute by listing a park bench or other on-the-street location.

¶ 4. In examining the text and context of the sex offender registration statute, we determine that the legislature anticipated that a registrant might be unable to provide the information required by the statute. Significantly, the legislature set forth an alternative procedure for monitoring the whereabouts of registrants who are unable to provide an address without imposing criminal liability.

¶ 5. By applying well-settled principles of statutory construction, we conclude that a registrant cannot be convicted of violating Wis. Stat. § 301.45(6) for failing to report the address at which he will be residing when he is unable to provide this information. We determine that a registrant is unable to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it. Here, the circuit court found that Dinkins attempted to comply with the statute, that he was unable to find housing on his own, and that the DOC would have to find housing for him. These findings are not clearly erroneous. Accordingly, albeit upon a different rationale, we affirm the court of appeals.

I

¶ 6. In 1999, Dinkins was convicted of a sex offense and received a 10–year sentence. He served his sentence, without parole, at Oshkosh Correctional Institution.

82

¶ 7. As a collateral consequence of his 1999 conviction, Dinkins must register as a sex offender under Wis. Stat. § 301.45. That statute provides that 10 days prior to release from prison, Dinkins was required to provide certain information to the DOC, including "[t]he address" at which he "will be residing." Wis. Stat. §§ 301.45(2)(a)5. and (2)(e)(4). Knowing failure to comply with the registration requirements is, with one exception that is inapplicable here, a Class H felony. Wis. Stat. § 301.45(6)(a)1.[3]

¶ 8. Dinkins' maximum discharge date was July 20, 2008. As of that date, he would no longer be under the supervision of the DOC.[4]

¶ 9. On several occasions in the months leading up to his maximum discharge date, Dinkins conferred with Myra Smith, a DOC social worker employed at the prison. According to DOC records, Dinkins initially resisted the DOC's request that he provide information about his post-release plans. However, once he was informed that he could be charged with a crime for failure to provide the information, Dinkins made efforts to secure a residence. He expressed hope that he could live with his daughter upon release, and he made unsuccessful efforts to contact her and other family members.

---

[3] As an additional consequence of his conviction, Dinkins is subject to lifetime GPS tracking under Wis. Stat. § 301.48.

[4] Dinkins was sentenced prior to the advent of the truth in sentencing statutory scheme. Accordingly, he was eligible for mandatory release on a certain date as determined by the parole board. *See* Wis. Stat. § 302.11(1) and (1g). When an inmate is released on parole prior to the completion of his sentence, the inmate is released into the custody of the DOC. Wis. Stat. § 304.06(3). Here, Dinkins served until his maximum release date. But for the criminal complaint issued in this case, he would have been released into the community without DOC supervision.

¶ 10. A little more than a month before his discharge date, Smith assisted Dinkins in filling out a standardized form labeled Sex Offender Registration. Smith filled out Dinkins' name, his identifying information, and information about his crime. She checked "unemployed" in the place for providing employment information and "does not drive" in the place for providing vehicle information.

¶ 11. In the place designated for providing his "residence street," Smith entered: "To be determined by Agent." She later testified: "I've used that [designation] before when an individual does not have an approved residence. And sometimes it is within days before a person is getting out that a residence is found, and then this can be updated."

¶ 12. According to Smith, in the typical case where a homeless registrant would be subject to extended supervision or parole upon release from incarceration, a DOC agent would look "for a transitional living [arrangement] . . . in a halfway house of some sort." However, in a maximum discharge case like Dinkins', the DOC provides "[u]sually no help" because it is understaffed and has no responsibility for supervising the registrant upon release.[5]

¶ 13. DOC records indicate that Lisa Gallitz, a DOC agent, made efforts to contact family members

---

[5] Q: In a situation where the discharge date and the [mandatory release] date are one in the same, what response do you get from Community Corrections when they are asked to help a defendant find a place to live? . . .

A: . . . Usually no help.

Q: And do they provide a reason why they're not helpful?

A: I think they're as understaffed as we are.

who would be willing to take in Dinkins, all to no avail. She later explained, "I have e-mails showing that people as high as the Secretary of Department of Corrections were involved in this situation."

¶ 14. On July 1, 2008, Gallitz sent the following email to advise the Sex Offender Registry Program (SORP) that Dinkins had been unable to secure a residence:

> I was told to contact you regarding William Dinkins. . . . He does not have a residence plan at this point. . . . I have done quite a bit of work to try to locate a family member willing to take him in so we can set up GPS. However, he really doesn't have much for family. His daughter, who he is counting on, hasn't returned my call—even after I left her a message that I would like a call back either way. My supervisor said . . . to contact you because if he doesn't provide a residence to SORP 10 days prior to release/discharge, he can be charged.

¶ 15. On July 3, Gallitz advised Smith that registrants who are actively seeking a residence but unable to find one are not typically charged with a crime:

> Per my conversation with [SORP] this morning, this is still a wait and see situation. [The SORP employee's] experience is that the DA has not charged someone who is actively seeking residence prior to release but just unable to find anything. So, law enforcement and the DA's office will not get involved until after the fact if he fails to keep SORP informed of his residence and fails to cooperate with GPS. So, we are no further ahead at

Q: Do they have any resources once someone discharges or any authority to set them up in a halfway house?

A: I'm not familiar with that. I don't believe they have authority, but I do not know.

this point. We still have the Sgt from Oshkosh on board to transport him on 7/20/08 but need a residence yet. And, GPS cannot be arranged until we have an address.[6] Not sure what else to say at this point.

¶ 16. Nevertheless, four days prior to his scheduled release, the DOC sent a letter to the Dodge County District Attorney requesting that Dinkins be prosecuted for violating the sex offender registration statute. The circuit court granted the District Attorney's petition for a writ of habeas corpus ad prosequendum, and Dinkins' initial appearance was scheduled for July 18.

¶ 17. On the morning of the initial appearance, Dinkins' daughter called Gallitz. She indicated that she would like to take her father into her home, but she was unable to do so because she had a three-year-old daughter and because her fiance and her landlord would not agree to the arrangement.

¶ 18. Following his initial appearance, Dinkins was released into the custody of the Dodge County Jail on a $10,000 cash bond. He filed a motion to dismiss the complaint, arguing that the circuit court lacked jurisdiction. Dinkins relied on Wis. Stat. § 301.45(2)(d), which provides:

> A person subject to [registration requirements] who is not under the supervision of the [DOC] or the department of health services [DHS] shall provide the infor-

---

[6] Although DOC employees repeatedly stated that it was necessary for Dinkins to have a land line to install GPS monitoring, that appears to not be the case. After oral argument, the State submitted a letter advising the court that in the case of a sex offender who lacks a fixed address, the DOC uses cellular GPS trackers that do not require a land line but need to be charged every day.

mation specified in par. (a) to the [DOC] in accordance
with the rules under sub. (8). If the person is unable to
provide an item of information specified in par. (a), the
[DOC] may request assistance from a circuit court or
the [DHS] in obtaining that item of information. A
circuit court and the [DHS] shall assist the [DOC] when
requested to do so under this paragraph.

Dinkins asserted that criminal prosecution was not the
appropriate remedy for his failure to provide an ad-
dress.

¶ 19. At the scheduled preliminary hearing, the
court denied Dinkins' motion to dismiss, concluding
that the option provided in Wis. Stat. § 301.45(2)(d) was
permissive, not mandatory. The court heard testimony
from Smith, Gallitz, and another witness. It found that
there was probable cause to believe Dinkins violated
Wis. Stat. § 301.45(6). Dinkins entered a not guilty plea.

¶ 20. The parties did not dispute the relevant
facts. Rather, they disagreed about the legal implica-
tions of those facts—whether a person in Dinkins'
position could be convicted of a felony for failing to
provide his residence 10 days prior to release from
prison. To that end, Dinkins filed three additional
motions to dismiss, arguing (1) selective prosecution;
(2) insufficient probable cause; and (3) that the statute
was unconstitutional due to vagueness, overbreadth,
and equal protection.

¶ 21. The circuit court issued a memorandum
decision and order. It stated that "the evidence adduced
at the preliminary examination seems to indicate that
[Dinkins] attempted to comply with the statute, but has
been unable to find housing for himself upon release."
Noting that it took "no position on the propriety or
wisdom of the criminal prosecution in this matter," the
circuit court denied Dinkins' motions. It stated: "the

statute criminalizes the *knowing* failure to provide the information. *Intentional* failure is not required." (Emphasis in original.)

¶ 22. Subsequently, after reviewing the evidence adduced at the preliminary hearing, the circuit court found Dinkins guilty as charged.[7] It withheld sentence and placed him on probation for 30 months. During sentencing, the circuit court commented: "I assume [the DOC is] going to have to find him a place. I mean, he can't find himself a place."

¶ 23. The circuit court imposed 90 days at the Dodge County Jail as a condition of probation. It commented that once the DOC found housing for Dinkins, the court would "stay the balance of the conditional jail and get him transferred to that placement." The court urged the DOC "to obtain a placement as soon as reasonably practicable[.]"

¶ 24. Dinkins filed a motion for postconviction relief. The circuit court denied his motion, and Dinkins appealed.

¶ 25. The court of appeals reversed based on its interpretation of the term "residing." *State v. Dinkins,* 2010 WI App 163, 330 Wis. 2d 591, 794 N.W.2d 236. It referred to an "apparent unintended gap" in the statute that is created by the "questionable assumption" that "all soon-to-be-released prisoners are able, in advance of leaving prison, to identify a location at which they may reside." *Id.,* ¶ 4.

¶ 26. We note that in response to the court of appeals' opinion, the DOC has attempted to close this

_____

[7] Because there was no dispute of fact, Dinkins waived his right to a jury trial and agreed that the court could decide the case on the basis of the exhibits and testimony elicited at the preliminary hearing.

unintended gap by issuing Wisconsin Department of Corrections Administrative Directive #11–04, DOC-1356 (Rev.), effective July 1, 2011. The directive provides guidance for addressing homeless registrants who are on active DOC supervision as well as homeless registrants who have been terminated from supervision.[8] Because it was not in effect at the time of Dinkins' violation and prosecution, this new directive does not resolve the issues presented in this case.

## II

¶ 27. We begin by clarifying what is not at issue in this case. It is undisputed that Dinkins was required to register, and continues to be required to register, as a sex offender. It is undisputed that, as part of his registration, Dinkins is required to provide his address. This case is not about whether homeless registrants are "exempt" from registration requirements. They are not.

■

¶ 28. Rather, this case presents the narrow question of whether, under the circumstances where

---

[8] The directive provides that registrants who have been terminated from supervision need not obtain placement approval prior to establishing a residence or moving to a new residence. Wis. Dep't of Corrections Admin. Directive #11–04, DOC-1356 (Rev.). If the registrant is "unable to secure permanent residence," the registrant must call the Sex Offender Registry every seven days to report "homeless" status, the locations where the registrant has been frequenting and sleeping in the past seven days, and the registrant's anticipated plan for the upcoming seven days. *Id.* When possible, the registrant must also provide an emergency contact person and telephone number. *Id.* Terminated registrants who fail to adhere to this policy are subject to non-compliance prosecution. *Id.*

The validity of this new directive is not before the court and is not addressed in this opinion.

Dinkins attempted to comply with the registration requirements but was unable to find housing, he can be convicted of a felony for failing to notify the DOC of "[t]he address at which" he would "be residing" upon his release from prison. To resolve this question, we must interpret the sex offender registry statute. Statutory interpretation is a question of law, which we review independently of the determinations rendered by the circuit court and the court of appeals. *State v. Leitner,* 2002 WI 77, ¶ 16, 253 Wis. 2d 449, 646 N.W.2d 341.

¶ 29. Statutory interpretation begins with the plain language of the statute. *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We generally give words and phrases their common, ordinary, and accepted meaning. *Id.* "However, the plain meaning [of a statute] is seldom determined in a vacuum[.]" *Osterhues v. Bd. Adjustment for Washburn County,* 2005 WI 92, ¶ 24, 282 Wis. 2d 228, 698 N.W.2d 701 (citing *Kalal,* 271 Wis. 2d 633, ¶ 46). Accordingly, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *Kalal,* 271 Wis. 2d 633, ¶ 46. Additionally, we interpret statutory language "reasonably, to avoid absurd or unreasonable results." *Id.* An interpretation that contravenes the manifest purpose of the statute is unreasonable. *Id.,* ¶ 49.

III

¶ 30. We begin our analysis by examining the text of the relevant statutory provisions. Wisconsin Stat. § 301.45 establishes a statewide registry of sex offenders. That statute provides that the registry "shall con-

tain" information about each registrant, including, among other things, identifying information, employment information, and "[t]he address at which the person is or will be residing." Wis. Stat. § 301.45(2)(a)5.

¶ 31. Registrants who are not under DOC or DHS supervision "shall provide" the required information to the DOC. Wis. Stat. § 301.45(2)(d). "If the person is being released from prison because he or she has reached the expiration date of his or her sentence," the registrant must provide the required information to the DOC "no later than 10 days before being released from prison." Wis. Stat. § 301.45(2)(e)4.

¶ 32. Subsection (6) prescribes penalties for violating the sex offender registration statute. It provides that a registrant who "knowingly fails to comply with any requirement to provide information" is "guilty of a Class H felony."[9] Wis. Stat. § 301.45(6)(a)1.

■

¶ 33. In isolation, the penalty subsection of the statute appears to criminalize the failure to provide required information—without regard to the registrant's ability to provide that information. However, it is a well-settled principle of statutory construction that "the plain meaning [of a statute] is seldom determined in a vacuum," and we therefore do not read words of a statute in isolation. *Osterhues,* 282 Wis. 2d

---

[9] Dinkins offers an interpretation of the statute that focuses on the term "knowingly." He argues that the term "knowingly" means not only that the registrant had knowledge of his failure to provide information, but also that the registrant had knowledge of the information itself.

The text of the statute does not support such an interpretation. "Knowingly" is an adverb, which modifies the verb phrase "fails . . . to provide." It does not modify the noun "information."

228, ¶ 24. Instead, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 34. When the penalty subsection is read in context, two propositions become clear. First, the legislature anticipated that a registrant might be unable to provide the required information. Second, the legislature set forth an alternative procedure for monitoring the whereabouts of registrants who are unable to provide an address without imposing criminal liability.

¶ 35. Wisconsin Stat. §§ 301.45(2)(b)-(d) set forth the manner in which information required for sex offender registration is provided to the DOC. The manner depends upon whether the registrant is under the supervision of the DOC, under the supervision of the DHS, or not supervised by either department. When the registrant is not under any supervision, the statute specifically anticipates that the registrant may be unable to provide the required information.

¶ 36. Subsection (2) provides in part:

> (b) If the [DOC] has supervision over a person subject to [the registration requirements], the [DOC] shall enter into the registry under this section the information specified in par. (a) concerning the person.

> (c) If the [DHS] has supervision over a person subject to [the registration requirements], [the DHS], with the assistance of the person, shall provide the information specified in par. (a) to the [DOC] in accordance with the rules under sub. (8).

> (d) A person subject to [the registration requirements] who is not under the supervision of the [DOC] or the

[DHS] shall provide the information specified in par. (a) to the [DOC] in accordance with the rules under sub. (8). *If the person is unable to provide an item of information* specified in par. (a), the [DOC] may request assistance from a circuit court or the [DHS] in obtaining that item of information. A circuit court and the [DHS] shall assist the [DOC] when requested to do so under this paragraph.

Wis. Stat. § 301.45(2)(b)-(d) (emphasis added).

■

¶ 37. The term "unable" is not defined in the statute. When a term is not defined, a general principle of statutory construction is that the term should be given its "common, ordinary, and accepted meaning." *Kalal,* 271 Wis. 2d 633, ¶ 45.

■

¶ 38. One dictionary defines "unable" as "lacking the necessary power, authority, or means, not able; incapable." *American Heritage Dictionary of the English Language* 1940 (3d ed. 1992). Another defines "unable" as "lacking the necessary power, competence, etc., to accomplish some specified act." *Random House Unabridged Dictionary* 2052 (2d ed. 1993). In the context of the statute, we conclude that a registrant is "unable" to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it.

¶ 39. The second proposition which becomes clear when the statute is read in context is that the legislature set forth an alternative procedure by which required information can be provided. Under sub. (2)(f), the DOC may require a registrant to report to a police station to provide any required information "that the person has not previously provided":

93

> The [DOC] may require a [registrant] to provide the [DOC] with his or her fingerprints, a recent photograph of the person and *any other information required under par. (a) that the person has not previously provided. The [DOC] may require the person to report to a place designated by the [DOC],* including an office or station of a law enforcement agency, *for the purpose of obtaining* the person's fingerprints, the photograph or *other information.*

Wis. Stat. § 301.45(2)(f) (emphasis added).

¶ 40. Exercising its authority under this statute, the DOC can require a registrant who is unable to provide an address to report to a local police station upon release. *Id.* If, upon reporting to the police station, the registrant continues to be unable to provide an address, the DOC can require him to continue reporting to the police station on a regular basis until he is able to do so. *Id.* Meanwhile, it can require the registrant to provide information about the places he is frequenting. *Id.*

¶ 41. The parties agree that the registration requirements protect the public by assisting law enforcement officers to monitor known sex offenders. By exercising its authority under sub. (2)(f), the DOC can ensure that a registrant who is unable to provide required information provides its functional equivalent and therefore can be effectively monitored without resorting to a preemptive prosecution.[10]

---

[10] Contrary to the dissent's assertion, homeless registrants cannot leave "law enforcement, the Wisconsin public, and their victims in the dark about their whereabouts without any repercussions whatsoever." Dissent, ¶ 112. If the DOC requires a registrant to report to the police station and provide information under Wis. Stat. § 301.45(2)(f) and the registrant knowingly fails to do so, it would appear that the State could charge

¶ 42. The State's brief makes scant reference to sub. (2)(f). The implication of its argument is that there is no need to consider this alternative statutory procedure because all homeless registrants are inherently capable of supplying information about where they "will be residing" 10 days in advance of release.

¶ 43. The State asserts: "because everyone has to live and sleep somewhere (even if descriptively 'homeless'), a soon-to-be-released sex offender . . . necessarily knows that he will be living and sleeping somewhere upon leaving prison . . . and thus is inherently capable of providing that information before release." The State contends that a registrant who is unable to find housing can comply with the requirements by providing the address of a park bench or other on-the-street location where he intends to sleep.

¶ 44. While we agree with the State that homeless registrants are not exempt from registration requirements and that homelessness is not a defense to failing to comply with the registration requirements, we disagree with the State's interpretation of the statute. If listing a park bench or other on-the-street location were sufficient to satisfy the requirements, the purpose of the statute would be significantly undermined. Such an interpretation is unreasonable.

¶ 45. The sex offender registration statute "does not evince the [legislature's] intent to punish sex offenders, but rather reflects the [legislature's] intent to protect the public and assist law enforcement." *State v. Bollig,* 2000 WI 6, ¶ 21, 232 Wis. 2d 561, 605 N.W.2d 199. This purpose is served when the public and law enforcement officers have accurate information about

the registrant for "knowingly fail[ing] . . . to provide information under subs. (2) to (4)[.]" Wis. Stat. § 301.45(6).

the whereabouts of known sex offenders so that they can be monitored.

¶ 46. Prison confinement limits not only a registrant's ability to secure a residence, but also the registrant's ability to learn about places where he could potentially live upon release. From the vantage point of prison, a registrant may well be unaware of locations in the community where homeless individuals are permitted to congregate and sleep. If listing a park bench is sufficient to satisfy the reporting requirement, a homeless registrant will be encouraged to simply provide an uninformed guess, with no assurance that the registrant would actually be able to stay in that location.

¶ 47. An uninformed guess reported for the sole purpose of technical compliance with the statute would provide little protection for the public. On the contrary, it might provide false reassurance that Dinkins' whereabouts were known.

¶ 48. Further, once a registrant has reported an address to the DOC, that registrant has a 10–day grace period to update any information that has changed. Wis. Stat. § 301.45(4)(a). If transient registrants may simply guess at a possible location and then need not report any change in location for 10 days, they could easily slip off the grid, altogether undermining the purposes underlying registration. Accordingly, we disagree with the State's assertion that a registrant can comply with the statute by listing a park bench or other on-the-street location as his residence.

¶ 49. A final principle of statutory interpretation that informs our discussion is that a statute must be interpreted "reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46. The sex offender registration statute is not intended to be punitive in nature. *Bollig*, 232 Wis. 2d 561, ¶ 21. It is unreasonable

to think that the legislature intended that a registrant be prosecuted for a Class H felony, which carries a maximum sentence of six years in prison, for failing to provide information which the registrant was unable to provide.

¶ 50. The unreasonableness of such an interpretation is further illustrated by reviewing the other reporting requirements. In addition to providing "the address at which [the registrant] is or will be residing," a registrant must provide the "name and address of place at which [the registrant] is or will be employed." Wis. Stat. § 301.45(2)(a)8. Just like the registrant's residence, the name and address of the registrant's employer must be provided 10 days prior to release. Wis. Stat. § 301.45(2)(e)4.

¶ 51. If the legislature intended that a registrant be prosecuted for failing to provide information, even if that information does not exist despite an attempt to provide it, a registrant who is unable to secure employment could also be subjected to a Class H felony for failing to provide employment information 10 days in advance of release from prison. Surely the legislature could not have intended such an unreasonable result.

¶ 52. By applying well-settled principles of statutory construction, we conclude that a registrant cannot be convicted of violating Wis. Stat. § 301.45(6) for failing to report the address at which he will be residing when he was unable to provide this information. We determine that a registrant is unable to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it.[11]

---

[11] At the outset, the dissent mischaracterizes the holding of the majority and asserts facts that are unfounded. *See* dissent, ¶ 88.

¶ 53. We emphasize that our interpretation of the statute is unlikely to apply to a large number of registrants. Typically, registrants leaving prison will be under the supervision of the DOC or the DHS. The DOC has recently declared: "Lacking a residence is unacceptable as a supervision strategy. Every effort must be made . . . in establishing a residence if the offender is unable to propose suitable housing." Wis. Dep't of Corrections Admin. Directive #11–04.

¶ 54. Additionally, looking forward, the DOC has promulgated new reporting requirements and guidelines for addressing the problem presented in this case. *Id.* When read in conjunction with the DOC's authority under Wis. Stat. § 301.45(2)(f), the directive may provide additional monitoring for registrants who have been terminated from supervision and who are unable to secure housing. *Id.*

¶ 55. Having interpreted the statutory language, we turn to applying that interpretation to the facts of this case. Here, the circuit court found that Dinkins

The dissent takes aim at a straw man by mischaracterizing the majority's holding and then attacking its own mischaracterized version. Under our holding, a registrant must do much more than merely "claim" homelessness to avoid prosecution for failing to provide an address. Rather, a registrant must be unable to find housing, despite reasonably attempting to do so. If a circuit court concludes that the registrant did not reasonably attempt to find housing, a prosecution may proceed.

Additionally, the "facts" relied upon by the dissent are not in this record. *See* dissent, ¶¶ 90–91. It has long been the law that an appellate court's review is circumscribed by the record before it. *See, e.g., Keplin v. Hardware Mut. Cas. Co.,* 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964). Tempting as it may be to conduct our own inquires outside the circuit court's record, we, as well as the litigants before us, are required to adhere to the rule of law.

"attempted to comply with the statute, but has been unable to find housing for himself upon release." During sentencing, the court reiterated that finding: "I assume [the DOC is] going to have to find him a place. I mean, he can't find himself a place." Implicit in the court's discussion is the assessment that Dinkins reasonably attempted to find housing for himself but was unsuccessful.

¶ 56. It is undisputed that Dinkins did not have a home of his own. The evidence in the record suggests that Dinkins made efforts to secure housing with relatives, but these efforts were unavailing. A DOC agent testified that, other than facilitating contact between Dinkins and his relatives, the DOC did not offer him additional assistance.[12] The circuit court's finding that Dinkins was unable to provide the required information to the DOC because it did not exist, despite his attempt to provide the information, is not clearly erroneous.

IV

¶ 57. Although our interpretation focuses on the statutory term "unable," the court of appeals focused on

---

[12] Q: "[I]t was never really discussed that there may be other options other than his daughter's residence?

A: I never suggested anything else.

Q: Okay. Essentially, the onus was put on him to come up with a residence, correct?

A: That's correct.

Q: There was no—it wasn't explained to him that there were other options other than him coming up with his own residence?

A: Well, I'm not aware of any other option. Because when he came out on July 20th, he was no longer on supervision. So the Department of Corrections was responsible to pick him up, transport him, wait until the GPS was hooked up; and then we were no longer — . . . we didn't have any authority on him at that point.

a different statutory term: "residing." Thus, before concluding our analysis, we pause to address an issue raised by the court of appeals' interpretation.

¶ 58. The court of appeals concluded that the term "residing" means "to live in a location for an extended period of time." *Dinkins*, 330 Wis. 2d 591, ¶ 20. It appeared to acknowledge that its interpretation would apply to all homeless registrants, and that under its interpretation, the statute would "fail[] to ensure that persons who lack 'an address at which they are or will be residing'—i.e., homeless registrants— provide information about their whereabouts to the [DOC]." *Id.*, ¶ 25 n.12.

¶ 59. We do not agree with the court of appeals' interpretation of the term "residing." Certainly, an address where a registrant intended to live for an extended period of time would constitute a place where a registrant "will be residing." However, we think the statutory term "residing" is broader, encompassing more temporary living arrangements as well.

¶ 60. The term "residing" is undefined in the statute and the relevant administrative code. The court of appeals' narrow interpretation of the term would appear to undermine the purpose of the statute. It would ill serve the statute's purpose to exempt a class of registrants who are without a location to live "for an extended period of time," without regard to the registrant's ability to secure some type of temporary or transitional housing.

¶ 61. In sum, we agree with the State that homeless registrants are not exempt from registration requirements and that homelessness is not a defense to failing to comply with the registration requirements. However, we disagree that Dinkins was capable of

100

complying with the statute by listing a park bench or other on-the-street location.

¶ 62. In examining the text and context of the sex offender registration statute, we determine that the legislature anticipated that a registrant might be unable to provide the information required by the statute. Significantly, the legislature set forth an alternative procedure for monitoring the whereabouts of registrants who are unable to provide an address without imposing criminal liability.

¶ 63. By applying well-settled principles of statutory construction, we conclude that a registrant cannot be convicted of violating Wis. Stat. § 301.45(6) for failing to report the address at which he will be residing when he is unable to provide this information. We determine that a registrant is unable to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it. Here, the circuit court found that Dinkins attempted to comply with the statute, that he was unable to find housing on his own, and that the DOC would have to find housing for him. These findings are not clearly erroneous. Accordingly, albeit upon a different rationale, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 64. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). Homeless convicted sex offenders are not exempt from the registration requirements set out in Wis. Stat. § 301.45(2)(a). In this case, we are faced with the question of how homeless convicted sex offenders satisfy their statutory obligations in a manner that will promote the purpose of § 301.45, which has been interpreted as informing law enforcement of the where-

abouts of convicted sex offenders.[1] The majority opinion and the dissenting opinion, as well as this concurrence, struggle with the interpretation of a statute that did not envision the compliance problems that the Department of Corrections (DOC) must face when confronting the registration of homeless persons who are required to provide an address that they do not have.

¶ 65. I conclude that William Dinkins, Sr., a homeless, unemployed, convicted sex offender, could have satisfied the first step of his Wis. Stat. § 301.45(2)(a)5. obligation to report "[t]he address at which [he] is or will be residing" and his § 301.45(2)(a)8. obligation to report "[t]he name and address of the place at which [he] is or will be employed" by reporting that he was "homeless" and "unemployed" on the DOC Sex Offender Registration form #1759, at least ten days before his release from prison. Then, because Mr. Dinkins is a convicted homeless sex offender who was "unable to provide" more particularized information on residence and employment, the DOC was obligated to request assistance from a circuit court or the Department of Health Services (DHS) before it could seek prosecution. *See* Wis. Stat. § 301.45(2)(d). If the DOC had requested assistance, a circuit court or the DHS would have been obligated to cooperate with the DOC in order to permit law enforcement agencies to obtain the information they needed to ascertain Mr. Dinkins' whereabouts. Wis. Stat. § 301.45(2)(d) and (9).

¶ 66. Furthermore, when the DOC seeks assistance under Wis. Stat. § 301.45(2)(d) and (9), a circuit court or the DHS shall establish a plan to provide the

---

[1] *See* "Policy Statement: It is the intent of the Division of Community Corrections and the Sex Offender Registry Program to monitor and track whereabouts of the sex offender registrants . . . ." Administrative Directive #11–04.

required information to the DOC. Such a plan could include directing a homeless or unemployed convicted sex offender who is to be released from prison and who will not be under supervision upon release to personally report to a designated law enforcement facility during a weekday, at least once per week, to provide law enforcement with the specific location(s) in the city and state that the convicted sex offender has been frequenting and sleeping the previous seven days, together with a report of the places from which he has sought employment.

¶ 67. Because Wis. Stat. § 301.45 was not properly interpreted or applied, the circuit court erred in convicting Mr. Dinkins of failing to comply with the sex offender reporting requirements. Therefore, although I do not agree with the majority opinion's reasoning, I do agree that Mr. Dinkins' conviction should be reversed, and I would remand the matter for further proceedings before the circuit court. I also agree with the dissent's concern that convicted sex offenders should not be left unaccounted for once they are released from prison; however, I do not agree a homeless sex offender's failure to provide an address should result in immediate prosecution.[2] Simply convicting Mr. Dinkins of a Class H felony will not provide the public or law enforcement with meaningful information such that they can locate Mr. Dinkins. Accordingly, although I do not join the majority opinion, I respectfully concur.

## I. BACKGROUND

¶ 68. On February 4, 1999, Mr. Dinkins was convicted of first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1). He was sentenced to a term of

---

[2] *See* dissent, ¶¶ 88–89.

imprisonment that concluded on July 20, 2008, his mandatory release date. As a result of his sexual assault conviction and his upcoming release from prison, Mr. Dinkins was required to register as a sex offender in accordance with the provisions of Wis. Stat. § 301.45(2)(d). He did complete a DOC Sex Offender Registration form #1759 that elicits the information required by § 301.45(2)(a). However, because Mr. Dinkins did not have a place to live upon release from prison, "To be determined by Agent" was written on the form for "Residence," and for "Employment," "unemployed" was checked.

¶ 69. Because Mr. Dinkins did not provide a specific address to the DOC, the DOC requested that the State prosecute him for a willful violation of the statutory registration requirements, pursuant to Wis. Stat. § 301.45(6). That prosecution resulted in Mr. Dinkins' conviction of a Class H felony.

## II. DISCUSSION

### A. Standard of Review

¶ 70. This case requires us to interpret and apply various provisions of the sex offender registration law, Wis. Stat. § 301.45. Statutory construction and application present questions of law for our independent review. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581. However, as we conduct our review, we benefit from prior analyses of the court of appeals and the circuit court. *Id.*

### B. Wisconsin Stat. § 301.45

¶ 71. The parties agree that the information Mr. Dinkins is required to report is set out in Wis. Stat. § 301.45(2)(a). Failing to report all of the information

104

listed in § 301.45(2)(a) may result in prosecution and conviction of a Class H felony. Wis. Stat. § 301.45(6).

¶ 72. Statutory interpretation "begins with the language of the statute." *Richards,* 309 Wis. 2d 541, ¶ 20 (quoting *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110). We assume that the meaning of the statute is expressed in the words that the legislature chose to use. *Id.* The context in which statutory terms are considered is helpful to our understanding. *Id.* When the statutory language is unambiguous, we apply the plain, clear meaning of the statute. *Id.* Statutory purpose also is important to statutory construction. *See Kalal,* 271 Wis. 2d 633, ¶ 48.

¶ 73. Mr. Dinkins had served the full term of the imposed sentence; therefore, no supervision was to be provided upon his release from prison. Accordingly, I begin with Wis. Stat. § 301.45(2)(d), which sets out the registration process for a sex offender no longer subject to supervision. Section 301.45(2)(d) provides:

> A person subject to sub. (1g) who is not under the supervision of the department of corrections or the department of health services shall provide the information specified in par. (a) to the department of corrections in accordance with the rules under sub. (8). If the person is unable to provide an item of information specified in par. (a), the department of corrections may request assistance from a circuit court or the department of health services in obtaining that item of information. A circuit court and the department of health services shall assist the department of corrections when requested to do so under this paragraph.

¶ 74. Wisconsin Stat. § 301.45(2)(d) states that "[i]f the person is unable to provide an item of information specified in par. (a)" certain assistance is available.

105

For example, the DOC "may request" that a circuit court assist in providing the required information, or the DOC "may request" assistance from the DHS. Section 301.45(2)(d) also provides that if the DOC makes such a request, a circuit court or the DHS "shall assist the department of corrections." Accordingly, the plain wording of the statute shows that the legislature anticipated that a person who would no longer be subject to supervision may be "unable to provide" the required information and when that occurs, assistance is to be provided.

¶ 75. In the case now before us, the DOC did not request a circuit court or the DHS to assist Mr. Dinkins in meeting his registration requirements. Instead, it immediately sought prosecution of Mr. Dinkins in circuit court for willfully failing to register. Apparently, the DOC concluded that because Wis. Stat. § 301.45(2)(d) states that the DOC "may" ask for assistance when a convicted sex offender is "unable to provide an item of information" required by § 301.45(2)(a), the DOC was not obligated to request assistance.

¶ 76. Although the term "may" usually does not compel action, we interpret statutory terms in the context in which they are used. *Spiegelberg v. State,* 2006 WI 75, ¶ 20, 291 Wis. 2d 601, 717 N.W.2d 641. Terms are also interpreted to support the purpose of the statute in which they are used. *Kalal,* 271 Wis. 2d 633, ¶ 48. Therefore, "may" can be mandatory when such a construction supports the purpose underlying the statute. *Bouchard v. Bouchard,* 107 Wis. 2d 632, 634, 321 N.W.2d 330 (Ct. App. 1982).

¶ 77. Here, the purpose underlying Wis. Stat. § 301.45 is to permit law enforcement to know the whereabouts of convicted sex offenders and what they are doing. Therefore, obtaining information about where the sex offender will be staying when he or she is

106

released from prison, even when he or she is homeless, should be the primary focus for the DOC. Although at first blush, the requirement that the DOC seek assistance may seem discretionary, the statutory context makes it mandatory when one observes that the joint efforts of the department and the circuit court would ensure that a homeless sex offender's whereabouts could be monitored and thereby satisfy the purpose underlying § 301.45.

¶ 78. Furthermore, statutory interpretation that directs the DOC to request assistance from a circuit court or the DHS has the consequence of compelling assistance. Wis. Stat. § 301.45(2)(d). That assistance is required is emphasized by § 301.45(9), which provides: "The department of health services, the department of children and families, the department of transportation and all circuit courts shall cooperate with the department of corrections in obtaining information under this section." Stated otherwise, the focus of § 301.45 is on obtaining information, not on immediate prosecution.

¶ 79. Accordingly, I conclude that the term "may" in Wis. Stat. § 301.45(2)(d) is not discretionary; rather, it directed the DOC to request assistance from the circuit court or the DHS so that a plan could have been determined to permit law enforcement to know the whereabouts of Mr. Dinkins, a homeless person. Because no plan was made that would promote the purpose of § 301.45 in regard to Mr. Dinkins, I would dismiss the complaint alleging a § 301.45(6) violation and remand the matter to the circuit court to determine such a plan.

¶ 80. My interpretation of Wis. Stat. § 301.45(2)(d) is strengthened by comparing it with the reporting and assistance requirements of § 301.45(2)(c). Both para. (2)(d) and para. (2)(c) incorporate the reporting require-

107

ments of § 301.45(2)(a)5., which requires reporting "The address at which the person is or will be residing." Both are registration directives that apply when a convicted sex offender is being released from prison. Accordingly, both serve the purpose of permitting law enforcement to ascertain the whereabouts of convicted sex offenders.

¶ 81. Mr. Dinkins was not subject to supervision upon his release from prison. Therefore, the obligation to provide the DOC with the information listed in Wis. Stat. § 301.45(2)(a) is his alone, according to the provisions of § 301.45(2)(d).

¶ 82. However, if Mr. Dinkins had been subject to supervision upon release from prison, Wis. Stat. § 301.45(2)(c) would have applied to the requirement to provide information to the DOC. Under § 301.45(2)(c), the DHS, not the convicted sex offender, is obligated to provide the information required by § 301.45(2)(a) to the DOC.[3] The convicted person simply "assists" the DHS.

¶ 83. Query, if a DHS employee designates the sex offender's residence as "To be determined by Agent," would the health services employee who completes the form be subject to prosecution for a Class H felony based on what he or she wrote on the form? One would hope not, yet Wis. Stat. § 301.45(6) says, "*Whoever* knowingly fails to comply with any requirement to provide information under subs. (2)" is subject to the listed penalties, and, it is the DHS that has the duty to provide information under § 301.45(2)(c).

---

[3] Wisconsin Stat. § 301.45(2)(c) provides:

If the department of health services has supervision over a person subject to sub. (1g), that department, with the assistance of the person, shall provide the information specified in par. (a) to the department of corrections in accordance with the rules under sub. (8).

¶ 84. Accordingly, I conclude a proper interpretation of § 301.45(2)(d) must cause the effect on two homeless convicted sex offenders to be consistent. Therefore, because a homeless convicted sex offender who is subject to supervised release would receive assistance in providing the necessary information, assistance should have been provided to Mr. Dinkins as well. Immediate prosecution of Mr. Dinkins was not appropriate.

¶ 85. On remand it will be helpful to note that although the DOC was authorized by statute to provide "rules necessary to carry out its duties," Wis. Stat. § 301.45(8), prior to Mr. Dinkins' conviction for willfully failing to register, the DOC had no rules directed to homeless persons. However, subsequent to Mr. Dinkins' conviction, the DOC issued Administrative Directive #11–04, and while not a DOC rule, it does establish a protocol for obtaining the required information about homeless sex offenders. In so doing, it furthers the public safety purpose of the registration requirement that drives the dissent,[4] by assisting law enforcement in determining the whereabouts of homeless sex offenders.

¶ 86. Administrative Directive #11–04 provides:

> While homeless, the sex offender registrant must call and speak with a staff member of the Sex Offender Registry or designated Registry Specialist every seven days, on a weekday, to report "homeless" status and the location(s) in the city and state where he/she has been frequenting and sleeping for the previous seven days and plans for the next seven days along with all other required registry data.

The Administrative Directive also provides that a sex offender who is no longer under supervision who "fail[s]

---

[4] *See* dissent, ¶ 90 n.2.

to adhere to policy set [in Administrative Directive #11–04] will be considered non-compliant with the Sex Offender Registry and be subject to non-compliance prosecution." Therefore, while not based expressly on an interpretation of Wis. Stat. § 301.45, the Administrative Directive recognizes that homeless persons may satisfy their registration requirements in ways that differ from a convicted sex offender who is not homeless. It also forms a basis for holding homeless sex offenders accountable if they fail to provide the required registration information. Accordingly, Administrative Directive #11–04 may be a useful starting point for the circuit court on remand.

## III. CONCLUSION

¶ 87. Because Wis. Stat. § 301.45(2)(d) was not properly interpreted or applied, the circuit court erred in convicting Mr. Dinkins of failing to comply with the sex offender reporting requirements. Therefore, I agree with the majority opinion that Mr. Dinkins' conviction should be reversed, and I would remand the matter for further proceedings before the circuit court. Accordingly, although I do not join the majority opinion, I respectfully concur.

¶ 88. ANNETTE KINGSLAND ZIEGLER, J. (*dissenting*). Today, the majority creates a registration loophole for arguably some of the most dangerous sex offenders: those whose whereabouts are unknown and who are otherwise not subject to supervision by the Department of Corrections (DOC). Pursuant to the majority opinion, the newly pronounced dictate is that a convicted and released sex offender who, like Dinkins, is not otherwise subject to any supervision, can no longer be adjudged criminally liable for failing to provide to the DOC his or her address as required under Wis. Stat.

§ 301.45(2)(a)5., so long as he or she claims to be homeless and unable to find housing. In other words, in spite of the manifest purpose behind the sex offender registration statute—to assist law enforcement in locating, investigating, and apprehending sex offenders in order to protect the public—the majority provides homeless sex offenders a means to escape from sex offender registration, thereby rendering those sex offenders essentially invisible to law enforcement and to the Wisconsin public. To the majority, it matters not that Dinkins has twice been convicted of sexual assault and that his most recent conviction for first-degree sexual assault of a ten-year-old child occurred only two years after he was discharged from parole for his prior sex offense. The majority condones Dinkins' failure to comply with the sex offender registration statute by evading the statute's plain language and creating a statutory procedure for dealing with homeless sex offenders where none has been provided by the legislature. The legislature could have enacted such a procedure, as other state legislatures have.[1] It did not. By creating a statutory procedure for dealing with homeless sex offenders, the majority substitutes its own judgment for that of the legislature and leaves sex offenders like Dinkins unaccounted for, contravening the very purpose of the sex offender registration statute. Surely, law enforcement, the Wisconsin public, and those who have been victimized by homeless sex offenders deserve more. I cannot join the majority's strained, result-driven statutory interpretation.

¶ 89. Based upon the plain language of the sex offender registration statute, I conclude that Dinkins

[1] *See, e.g.,* Cal. Penal Code § 290.011 (2008); 730 Ill. Comp. Stat. 150/6 (2007); Minn. Stat. § 243.166, subd. 3a (2010); Wash. Rev. Code § 9A.44.130(5) (2009).

111

was properly convicted of knowingly failing to comply with the requirement that he provide to the DOC the address at which he will be residing upon his release from prison. Whether Dinkins and other homeless sex offenders ought to be exempt from that requirement is a question for the legislature—not this court—to decide.

## I. FACTUAL BACKGROUND

¶ 90. On February 4, 1999, Dinkins was convicted of one count of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1) (1997–98). The complaint[2] alleged that on or around April 18, 1998, Dinkins sexually assaulted his then girlfriend's ten-year-old daughter by bending her over the bed and rubbing his penis along the crack of her buttocks and against her vagina. When asked if anything else happened, the victim told the investigating officer that "white stuff was coming out of the end of [Dinkins'] ding dong" and that "he had placed his ding dong in her mouth and made her suck on it."

¶ 91. According to the complaint, at the time of the assault, Dinkins was living with the victim's mother. The complaint identified Dinkins' address as one in Fox Lake, Wisconsin.

¶ 92. Dinkins was sentenced to ten years imprisonment for sexually assaulting his ten-year-old victim.

---

[2] The complaint filed against Dinkins, including the nature of the charge, is public record. Moreover, but for the majority's holding today, law enforcement and the public would typically be entitled to track a registered sex offender like Dinkins through the online sex offender registry, *see* Wisconsin DOC, Sex Offender Registry, http://offender.doc.state.wi.us/public/ (last visited Feb. 9, 2012), and easily ascertain the nature of the sex offender's conviction.

112

He served his sentence at Oshkosh Correctional Institution, a medium security prison, until his maximum discharge date of July 20, 2008. In other words, Dinkins, unlike many criminals, served the entire length of his sentence in prison. Consequently, but for the criminal complaint issued in the instant case for failure to comply with the sex offender registration statute, Dinkins would have been released into the community without DOC supervision. *See* majority op., ¶ 8 & n.4.

¶ 93. There is no question that as a result of his underlying conviction for a "sex offense," first-degree sexual assault of a child, Dinkins was required to register as a sex offender. *See* Wis. Stat. § 301.45(1d)(b), (1g)(a). The legislature has charged the DOC with maintaining a registry of all sex offenders in Wisconsin. § 301.45(2)(a). The purpose of sex offender registration is not to further punish sex offenders but rather to protect the public. *See State v. Smith*, 2010 WI 16, ¶ 26, 323 Wis. 2d 377, 780 N.W.2d 90; *State v. Bollig*, 2000 WI 6, ¶¶ 20–21, 232 Wis. 2d 561, 605 N.W.2d 199. More specifically, registration assists law enforcement in locating, investigating, and apprehending sex offenders in order to protect the health, safety, and welfare of the Wisconsin public. *Bollig*, 232 Wis. 2d 561, ¶ 20. In addition, the public has online access to information about sex offenders and their whereabouts. *See* Wisconsin DOC, Sex Offender Registry, http://offender.doc.state.wi.us/public/. As part of maintaining the registry, the DOC must collect certain information about each sex offender in Wisconsin, including "[t]he address at which the person is or will be residing." § 301.45(2)(a)5. In this case, Dinkins was required to provide such information to the DOC no later than ten days before his release from prison—in other words, no later than July 10, 2008. *See* § 301.45(2)(e)4. Section 301.45(6)(a)1. expressly provides that "[w]hoever

knowingly fails to comply with any requirement to provide information" under § 301.45(2) through (4) is guilty of a Class H felony. The penalty provision has no exceptions.

¶ 94. The registration requirements are no surprise to sex offenders and to Dinkins in particular. In this case, the DOC was responsible for notifying Dinkins of his need to comply with the requirements of the sex offender registration statute. *See* Wis. Stat. § 301.45(3)(b)2. The DOC so notified Dinkins. What is more, Dinkins had prior experience in registering as a sex offender. Dinkins' underlying conviction for first-degree sexual assault of a child was not his first conviction for a sex offense. As early as January 1996, Dinkins was required to register as a sex offender as a result of being convicted in 1992 of attempted second-degree sexual assault in violation of Wis. Stat. §§ 939.32 and 940.225(2) (1991–92). Still, on June 2, 2008, seven weeks before the date of Dinkins' maximum discharge, Lisa Gallitz, a parole agent from the DOC, spoke with Dinkins via telephone and notified him that he was required to register as a sex offender as a result of his conviction for first-degree sexual assault of a child and that he could be criminally charged for failing to inform the DOC of his specific residential address.

¶ 95. Two days later, on June 4, 2008, Myra Smith, a social worker at Oshkosh Correctional Institution, gave Dinkins a copy of a Notice of Requirements to Register and a standardized sex offender registration form. *See* Wis. Stat. § 301.45(3)(b)3m. The notice stated that "under Wisconsin Statute 301.45, you are required to comply with, and provide information/changes in your RESIDENCE, EMPLOYMENT, SCHOOL ENROLLMENT, VEHICLE USE OR CHANGE OF NAME status . . . ." Furthermore, the notice specified that Dinkins

114

had to comply with the sex offender registration requirements "[a]t least 10 days prior to [his] sentence or commitment expiration."

¶ 96. Smith filled out the sex offender registration form on Dinkins' behalf. The form indicated that Dinkins was unemployed, was not enrolled in school, and did not drive. In addition, in the space reserved for "RESIDENCE STREET," Smith wrote, "To be determined by Agent."

¶ 97. Dinkins signed and dated the bottom of the form. The following clause was printed above Dinkins' signature:

> I have been notified of my duty to register in accordance with Wisconsin Statute 301.45. I have read the requirements as indicated on the reverse side of this form. I understand that I am legally obligated to supply this information, and that failure to comply, or providing false information, may be cause for revocation and/or further criminal prosecution. I understand that this information will be used for law enforcement purposes and other purposes established by law.

¶ 98. In the ensuing weeks, Smith made several attempts to help Dinkins find living arrangements. Smith first offered to help on June 10, 2008, but Dinkins declined. On June 17, 2008, Smith arranged for Dinkins to telephone his ex-wife, but the line was busy. From that point forward, up until Dinkins' maximum discharge date, Smith contacted Dinkins "at least weekly" to inquire about his living arrangements. According to Smith, Dinkins "was always waiting for a reply from his daughter."

¶ 99. By July 10, 2008, ten days before his maximum discharge, Dinkins still had not given the DOC any indication as to where he would be residing upon

his release from prison. Consequently, on July 17, 2008, Dinkins was charged with knowingly failing to comply with the requirement that he provide to the DOC the address at which he will be residing upon his release from prison, in violation of Wis. Stat. § 301.45(6)(a).

## II. ANALYSIS

¶ 100. Whether Dinkins was properly convicted of violating Wis. Stat. § 301.45(6)(a) involves a straight-forward interpretation and application of the sex offender registration statute. Our canons of statutory interpretation are often-stated and well understood. "[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). The rationale is simple:

> [C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

¶ 101. In addition, "scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute," so long as they are ascertainable from the statute itself. *Kalal*, 271 Wis. 2d 633, ¶ 48. Importantly, "a plain-meaning interpretation can-

116

not contravene a textually or contextually manifest statutory purpose." *Id.,* ¶ 49 (internal footnote omitted).

¶ 102. Applying these canons of statutory interpretation to the sex offender registration statute, I conclude that Dinkins was properly convicted of violating Wis. Stat. § 301.45(6)(a). Section 301.45(6)(a)1. states, in relevant part, that "[w]hoever knowingly fails to comply with any requirement to provide information" under § 301.45(2) through (4) is guilty of a Class H felony. Significantly, although it could have, the statute does not exempt from its reach any certain sex offenders, homeless or otherwise. Pursuant to the plain language of § 301.45(6)(a), a person is criminally liable if he or she was required to provide information under § 301.45(2) through (4) and knowingly failed to provide the information as required. *See* Wis JI—Criminal 2198.

¶ 103. Here, there is no question that Dinkins was required under Wis. Stat. § 301.45(2) to provide to the DOC certain information about himself and was required to do so no later than July 10, 2008, ten days before his release from prison. *See* § 301.45(2)(a), (2)(e)4. Specific to this case, the required information included "[t]he address at which [he] . . . will be residing" upon his release from prison. *See* § 301.45(2)(a)5.

¶ 104. Furthermore, there is no question that Dinkins knowingly failed to provide his address as required. Dinkins received written and verbal notice of his need to provide to the DOC his specific residential address at least ten days prior to the expiration of his sentence. Still, as of July 10, 2008, Dinkins had not given the DOC any indication whatsoever as to where he would be residing upon his release from prison. As far as the DOC knew, Dinkins' address was merely "[t]o be determined"; in other words, Dinkins could be living anywhere in the world.

117

¶ 105. Given these circumstances, Dinkins violated the plain language of Wis. Stat. § 301.45(6)(a). The majority, at least initially, seems to agree. *See* majority op., ¶ 33 ("In isolation, the penalty subsection of the statute appears to criminalize the failure to provide required information—without regard to the registrant's ability to provide that information.") This court's analysis ought to end there. When the words of a statute are plain, " 'judicial inquiry is complete.' " *Germain,* 503 U.S. at 254 (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)).

¶ 106. Nevertheless, the majority, unsatisfied with the result yielded by a plain-meaning interpretation of Wis. Stat. § 301.45(6)(a), proceeds to conclude that Dinkins was not properly convicted of violating § 301.45(6)(a). The majority so concludes by doing an end-around interpretation of the sex offender registration statute and creating a statutory procedure for dealing with homeless sex offenders where none exists.

¶ 107. Relying on Wis. Stat. § 301.45(2)(d) and (2)(f), the majority concludes that the legislature envisioned a scenario like Dinkins' and set forth a procedure for dealing with homeless sex offenders like him without imposing criminal liability. *See* majority op., ¶¶ 4, 34–41. In actuality, § 301.45(2)(d) and (2)(f) say no such thing.

¶ 108. Wisconsin Stat. § 301.45(2)(d) is specific to sex offenders, like Dinkins, who are not under the supervision of the DOC. Subsection (2)(d) states:

> A person subject to [the requirements of sex offender registration] who is not under the supervision of the department of corrections or the department of health services shall provide the information specified in par. (a) to the department of corrections in accordance with the rules [promulgated by the DOC] under

sub. (8). If the person is unable to provide an item of information specified in par. (a), the department of corrections may request assistance from a circuit court or the department of health services in obtaining that item of information. A circuit court and the department of health services shall assist the department of corrections when requested to do so under this paragraph.

§ 301.45(2)(d). As the majority points out, the plain language of subsection (2)(d) contemplates that a sex offender like Dinkins may be "unable to provide an item of information specified" in subsection (2)(a). Majority op., ¶ 36; *see also* concurrence, ¶ 75. If such is the case, the DOC then has the option of requesting assistance from a circuit court or the Department of Health Services (DHS) in obtaining that item of information.[3] § 301.45(2)(d).

¶ 109. Wisconsin Stat. § 301.45(2)(f) gives the DOC the authority to require a sex offender to report to a designated location for the purpose of providing fingerprints, a recent photograph, or any other required information that was not previously provided:

> The department may require a person covered under [the sex offender registration statute] to provide the department with his or her fingerprints, a recent

---

[3] The concurrence concludes that the DOC is obligated to request assistance from a circuit court or the DHS in obtaining the missing item of information. Concurrence, ¶ 78. I disagree. I decline to construe the word "may" in Wis. Stat. § 301.45(2)(d) as "shall," particularly when the word "shall" appears in the very next sentence. *See Karow v. Milwaukee Cnty. Civil Serv. Comm'n,* 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978) ("When the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings.").

photograph of the person and any other information required under par. (a) that the person has not previously provided. The department may require the person to report to a place designated by the department, including an office or station of a law enforcement agency, for the purpose of obtaining the person's fingerprints, the photograph or other information.

¶ 110. To be sure, Wis. Stat. § 301.45(2)(d) and (2)(f) reveal that the legislature anticipated that a sex offender may be unable to, or simply may choose not to, provide information required under subsection (2)(a), including his or her address. However, § 301.45(2)(d) and (2)(f) say nothing about a sex offender being exempt from criminal liability under § 301.45(6)(a) for failing to provide such required information. Instead, § 301.45(2)(d) and (2)(f) simply give the DOC options for obtaining the missing information, either by requesting assistance from a circuit court or the DHS or by requiring the sex offender to report to a designated location. Indeed, these options assist the DOC in fulfilling its duty to maintain a registry that contains all of the required information with respect to each and every sex offender in Wisconsin. *See* § 301.45(2)(a).

¶ 111. Rather than taking Wis. Stat. § 301.45(2)(d) and (2)(f) for what they are on their face, simply different means for the DOC to obtain missing information about a sex offender, the majority takes the extraordinary leap of interpreting these provisions to mean that the legislature did not intend for a sex offender to be presumptively prosecuted for failure to provide certain required information. *See* majority op., ¶ 41. Specific to the address requirement, the majority proceeds to create a procedure for dealing with homeless sex offenders, explaining that the DOC can require a homeless sex offender to regularly report to a police

120

station until he or she is able to provide an address and, in the meantime, can require the sex offender to provide information about the places he or she frequents. *Id.*, ¶ 40. The majority substitutes its own judgment for that of the legislature and creates a statutory procedure for dealing with homeless sex offenders where none exists.

¶ 112. The majority's interpretation of the sex offender registration statute flies in the face of the plain language of Wis. Stat. § 301.45(6)(a), which imposes criminal liability for the failure to comply with "any requirement to provide information" under § 301.45(2) through (4), without regard to the sex offender's ability to provide such information. Worse still, the majority's interpretation leaves homeless sex offenders like Dinkins unaccounted for, contravening the very purpose of the sex offender registration statute. *See Kalal,* 271 Wis. 2d 633, ¶ 49 ("[A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." (Internal footnote omitted.)). The unreasonableness of the majority's interpretation is best demonstrated by an example: had Dinkins still been under the DOC's supervision and thus had his whereabouts subject to scrutiny, he could have been sent back to prison for failing to provide his address as required under § 301.45(2)(a)5. As it stands now, however, Dinkins and other sex offenders like him can claim homelessness; escape criminal liability; and leave law enforcement, the Wisconsin public, and their victims in the dark about their whereabouts without any repercussions whatsoever. Surely, the public is more adequately protected from the sex offender who is still subject to supervision by the DOC, and yet, that is the sex offender whom the majority subjects to incarceration for failing to comply with the sex offender regis-

tration statute, while the sex offender who is without any supervision is free to roam our streets and be entirely unaccounted for. Indeed, the majority's own fabricated procedure for dealing with homeless sex offenders begs the question: if a homeless sex offender like Dinkins cannot be prosecuted for failing to provide to the DOC his or her address and is not otherwise under the DOC's supervision, how is the DOC supposed to locate such a sex offender for the purpose of requiring him or her to regularly report to a police station? The majority does not say. Surely the legislature did not intend such a backwards result. *See Kalal,* 271 Wis. 2d 633, ¶ 46 (directing that we interpret statutory language "reasonably, to avoid absurd or unreasonable results").

¶ 113. Rather, consistent with the plain language of the sex offender registration statute and its manifest purpose, I conclude that all sex offenders in Wisconsin, even those who are homeless, must comply with the address requirement under Wis. Stat. § 301.45(2)(a)5. or risk criminal liability under § 301.45(6)(a). Such an interpretation is not novel or unique. As articulated by the United States Department of Justice (USDOJ), "[r]equiring registration only where a sex offender has a residence or a home in the sense of a fixed abode would be too narrow to achieve [the Sex Offender Registration and Notification Act]'s objective of 'comprehensive' registration of sex offenders . . . ." Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,061 (July 2, 2008) (quoting 42 U.S.C. § 16901 (2006)).[4] Similar to Wisconsin's sex offender registration statute, the federal Sex Offender Registration and Notification Act

---

[4] All subsequent references to the United States Code are to the 2006 version unless otherwise indicated.

(SORNA) requires each sex offender to provide "[t]he address of each residence at which the sex offender resides or will reside." 42 U.S.C. § 16914(a)(3). SORNA defines "resides," with respect to an individual, as "the location of the individual's home or other place where the individual habitually lives." § 16911(13). In interpreting SORNA, the USDOJ has recognized that homeless sex offenders cannot provide the residence address required by § 16914(a)(3) "because they have no definite 'address' at which they live." Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. at 38,055. Nevertheless, in order to fulfill the purpose of SORNA, the USDOJ still requires homeless sex offenders to meet the functional equivalent of the address requirement by providing specific descriptions of where they habitually live:

> [S]ome more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives—e.g., information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places) where the sex offender stations himself during the day or sleeps at night, shelters among which the sex offender circulates, or places in public buildings, restaurants, libraries, or other establishments that the sex offender frequents. Having this type of location information serves the same public safety purposes as knowing the whereabouts of sex offenders with definite residence addresses.

*Id.* at 38,055–056.

¶ 114. Likewise, in this case, I conclude that Dinkins could have complied with the address requirement under Wis. Stat. § 301.45(2)(a)5., thereby avoiding criminal liability under § 301.45(6)(a), by providing

123

to the DOC a specific description of the place or places which he will be spending his days and nights upon his release from prison. Such information would have served the purpose of the sex offender registration statute by assisting law enforcement in locating Dinkins in order to protect the public. As it stood, however, the DOC knew only that Dinkins' address was "[t]o be determined," leaving law enforcement, the public, and his victim at a total loss as to his whereabouts. By informing the DOC only that his address was "[t]o be determined," Dinkins violated the plain language of § 301.45(6)(a) and defied the very purpose of the sex offender registration statute.

¶ 115. For the foregoing reasons, I respectfully dissent.

¶ 116. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.