**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2019AP90-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF3498

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

   V.

GEORGE E. SAVAGE,

      DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  MARK A. SANDERS, Judge.  *Order reversed and cause remanded with directions*.

Before Brash, P.J., Kessler and Dugan, JJ.

¶1   DUGAN, J.   George E. Savage appeals the judgment of conviction, following his guilty plea to one count of violation of the sex offender registry statute.  He also appeals the order denying his postconviction motion.

¶2    Savage argues that the trial court erred in denying his postconviction motion to withdraw his guilty plea because Savage established that, due to the constitutionally ineffective assistance of his trial counsel, his guilty plea was not knowing, voluntary, and intelligent.[1]

¶3    We conclude that the trial court misconstrued our supreme court's holding in *State v. Dinkins* and, as a result, it failed to properly analyze Savage's allegation that trial counsel was ineffective. *See id.*, 2012 WI 24, 339 Wis. 2d 78, 810 N.W.2d 787. Therefore, we reverse the trial court's order and remand this matter with directions that the trial court make proper findings of fact and properly analyze Savage's ineffective assistance of counsel claim in light of our discussion regarding *Dinkins*.[2]

## BACKGROUND

¶4    In March 2016, Savage was in prison for exposing his genitals to a child and his failure to register as a sex offender. On March 23, 2016, he was released from prison and placed on extended supervision with discretionary global positioning satellite monitoring (GPS). Further, as a result of Savage's conviction

---

[1] Savage's postconviction motion to withdraw his guilty plea alleged that trial counsel was ineffective in two ways. Savage's motion also asserted that trial counsel told him multiple times that if he pled guilty, he would not receive more than two years of initial confinement, that any sentence in the criminal case would be concurrent with his two-year revocation sentence, and that he would not receive any additional jail time. However, on appeal Savage explicitly states that the sentencing issue "is not presently before this [c]ourt" (underlining omitted). Therefore, Savage is deemed to have abandoned that issue.

[2] While Savage appeals from both a judgment and order, we address only the order for the reasons set forth in this opinion.

for exposing his genitals to a child he was ordered to register as a sex offender until 2024.[3]

¶5 On May 18, 2016, Savage cut off his GPS bracelet and absconded from his extended supervision. On August 4, 2016, the State charged Savage with violating the sex offender registry statute and an arrest warrant was issued. The complaint charged that Savage "on or about Thursday May 5, 2016 … has knowingly failed to comply with reporting requirements under WIS. STAT. §§ 301.45(2) to (4)[.]"[4] As factual support for the charge, the complaint alleged:

> The defendant has failed to provide the Department with updated information within 10 days after a change to the information required to be provided by WIS. STAT. [§] 301.45(2)(a). [In this case, where he was residing.] The defendant was released from prison on 3/23/16. On May 18, 2016, the agent of record informed the SORP that the defendant cut off his GPS bracelet and absconded from supervision.

Ultimately, Savage was arrested on the warrant and made an initial appearance in this case before a Milwaukee County Circuit Court court commissioner. Subsequently, the State and Savage reached a plea agreement and on May 23, 2017, the trial court presided over a combined guilty plea and sentencing hearing.

¶6 During the plea portion of the hearing, the State outlined the terms of the plea agreement under which Savage would plead guilty to the charge, and the State would recommend one year of confinement in the Milwaukee County House

---

[3] Therefore, at the time of his release onto extended supervision Savage was both being supervised by the Department of Corrections and had to comply with reporting requirements of the Sex Offender Registration Program (SORP).

[4] All references to the Wisconsin Statutes are to the 2017-2018 version unless otherwise noted.

of Correction. The trial court then engaged in a plea colloquy with Savage, which included questioning him about his understanding of the charge against him, the maximum possible penalties for the charge, and the accuracy of information contained on the plea questionnaire and waiver of rights form. The trial court also reviewed the elements of the offense. The trial court then accepted Savage's guilty plea, and found him guilty of the offense of violating the sex offender registry statute. Savage does not challenge the sufficiency of the court's plea colloquy.

¶7     During the sentencing portion of the hearing, the State recommended a one-year sentence in the House of Correction. The prosecutor told the trial court that Savage was released from prison on his prior case on March 23, 2016. She stated that Savage was on discretionary GPS and extended supervision and that, just under two months later, he cut off his GPS and he was in absconder status with the Department of Corrections related to his extended supervision. She then argued that Savage was "either going to maintain compliance with the sex offender registry or eventually he's just going to start going to prison if he can't return a letter."[5]

¶8     Trial counsel then addressed the trial court regarding sentencing. She began by discussing the circumstances of the offense, stating,

> I don't know how you can return a letter if you don't have
> an address for which the letter to be sent [sic].

---

[5] The record reflects that when the SORP staff learned that Savage absconded from his extended supervision, the staff sent a letter to Savage at an address that he had reported to the SORP on May 16, 2016, as his temporary address. The letter was returned with the label, "Attempted—Not Known." Savage never responded to the letter and we surmise this is the letter the prosecutor was referencing. On June 17, 2016, Savage called the SORP staff to tell them that he did not receive his letter.

> I believe that was the issue for Mr. Savage and sadly for many others that … are incarcerated. Ultimately the sentence is finished, completed, and they are released but often released back into the community with nothing. And I believe that was the situation for Mr. Savage.
>
> In reviewing the notes from the agent and the registry, he was, in fact, calling in, leaving messages with phone numbers, with addresses, emails which he could actually access at a library or other community centers and trying to do so.
>
> ....
>
> It is noted in those reports it appears his intent was to remain compliant, but there's also an acknowledgment that it can be difficult. And I quote, "This is happening quite a bit especially with the homeless."
>
> I believe that this is exactly the situation for Mr. Savage. The GPS here was discretionary. I don't know what the thought was behind that or the reasoning. But Mr. Savage literally was staying where he could whether it was empty buildings, back of a car, stairwells.
>
> ... I believe he was doing the best he could.
>
> ....
>
> I also note they kept sending letters to an address where, in fact, the letters were returned."

Trial counsel advised the trial court that Savage was currently serving a two-year and three-day sentence on the revocation of his extended supervision and requested that the trial court impose a concurrent sentence.

¶9 The trial court imposed a concurrent sentence of thirty months of initial confinement, followed by twenty-four months of extended supervision. Judgment was entered on May 24, 2017.

¶10 On April 10, 2018, Savage, then represented by postconviction counsel, filed a motion for postconviction relief. Savage's motion alleged that he should be allowed to withdraw his guilty plea based on manifest injustice because

his trial counsel was prejudicially ineffective in communicating with and advising him during the entire plea process, which led to a guilty plea that was "involuntary, ignorant, and wrongly obtained."

¶11 As relevant to this appeal, Savage averred in his supporting affidavit that trial counsel "had never informed [him] that good faith efforts to comply with [his] sex offender supervision requirements would bar [his] conviction." Savage further averred,

> Essentially, I was homeless during the relevant period of time. I now understand that this homelessness was a defense to my ability to provide an address. [Trial counsel] had advised me of the elements of the offense, but she had never advised me that this defense was available to me. I had informed her of my homelessness, and my inability to provide an address due to this homelessness. I would have proceeded to trial had I realized from [trial counsel] that I could pursue this defense.
>
> … I only signed the plea agreement because of these representations, omissions, and promise(s). If not for these representations, omissions, and promise(s), I would have proceeded to jury trial.

The parties filed briefs on the motion and on January 3, 2019, the trial court conducted an evidentiary hearing at which both trial counsel and Savage testified.

¶12 At the conclusion of the hearing, the trial court rendered an oral decision denying Savage's postconviction motion. The trial court found that trial counsel did not tell Savage that he had a defense "because [Savage] did not have a defense." The trial court further found that "[a]s a result, there is not prejudice as a result of [trial counsel] not telling him that there was a defense." A brief written order denying the motion was also entered on January 3, 2019. This appeal followed.

**DISCUSSION**

¶13   Savage argues that the trial court erred in denying his postconviction motion to withdraw his guilty plea because he established that, as a result of trial counsel's prejudicial ineffectiveness, his guilty plea was not knowing, voluntary, and intelligent.  Savage relies upon the failure of trial counsel to inform him that good faith efforts to comply with the sex offender registry requirements could be a defense to the charge.

**I.   Standard of review and applicable law**

¶14   A defendant who seeks to withdraw a guilty plea after sentencing must prove by clear and convincing evidence that a refusal to allow plea withdrawal would result in manifest injustice.  *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482.  A defendant may bring a *Nelson/Bentley*[6] motion to withdraw his or her plea on manifest injustice grounds based on a factor extrinsic to the plea colloquy that renders the plea infirm.  *See State v. Sulla*, 2016 WI 46, ¶25, 369 Wis. 2d 225, 880 N.W.2d 659.  One way a defendant may demonstrate manifest injustice is to establish that he or she received ineffective assistance of counsel.  *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.  In other words, a defendant who shows that his or her counsel was ineffective has demonstrated a manifest injustice that entitles the defendant to withdraw his plea.  *State v. Cain*, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177.

---

[6] *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), *modified by State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶15    To establish that trial counsel was ineffective, the defendant has the burden of proving that trial counsel's performance was deficient and that he or she was prejudiced as a result of that deficient performance. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must show that his or her counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. **Id.** at 688. In order to satisfy the prejudice prong of the **Strickland** test, the defendant seeking to withdraw his or her plea must allege facts to show "that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **State v. Bentley**, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (citing **Hill v. Lockhart**, 474 U.S. 53, 59 (1985)).

¶16    Whether trial counsel was ineffective is a question of constitutional fact that we analyze under a mixed standard of review. *See* **Dillard**, 358 Wis. 2d 543, ¶86. We will uphold the trial court's findings of fact unless they are "clearly erroneous." *See* **id.** However, we independently review whether those facts constitute ineffective assistance. *See* **id.**

## II.    The trial court erred in applying *Dinkins*

### A.    Savage did not concede that case law regarding a *Dinkins* defense is unsettled

¶17    Savage argues that trial counsel's performance was deficient because, although she knew that Savage was homeless, trial counsel failed to inform him that, under **Dinkins**, good faith efforts to comply with registration requirements could be a defense.

¶18    Citing **State v. Breitzman**, the State argues that, in order to demonstrate that trial counsel's performance was deficient, Savage would need to

raise an issue of "settled law." *See id.*, 2017 WI 100, ¶49, 378 Wis. 2d 431, 904 N.W.2d 93. The State then argues that Savage cannot demonstrate that trial counsel was ineffective for failing to raise a "***Dinkins*** good-faith" defense because in his request for oral argument and publication on appeal he conceded that "[t]his [a]ppeal involves issues of law which are not settled." The State argues that Savage's statement is a concession, which establishes that trial counsel's failure to raise a ***Dinkins*** good faith defense did not fall below the objective standard of reasonableness as necessary to sustain Savage's ineffective assistance of counsel claim.

¶19      However, the State cites no case law or rule for the proposition that such a statement on publication is tantamount to a concession that the case law is unsettled for purposes of an ineffective assistance of counsel claim. The State also does not develop an argument why we should consider such a statement as a concession for that purpose. Therefore, we decline to further consider the State's contention. *See **State v. Pettit**,* 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

### B.      After *Dinkins*, the law on the issue in this case is not unsettled

¶20      The State also argues that, even without Savage's concession, the law was unsettled. The State asserts that the trial court properly rejected Savage's ineffective assistance of counsel claim where it correctly recognized that ***Dinkins*** did not apply to Savage's situation because the case involved narrow circumstances that are inapplicable to Savage's case.

¶21      In ***Dinkins***, the defendant was convicted for failing to comply with the requirement to provide notice of his address not later than ten days prior to

release from prison because he had reached his maximum discharge date. *See id.*, 339 Wis. 2d 78, ¶1. Dinkins was unable to locate housing before his release, and the State charged him with a registry violation before his release. *See id.* The supreme court held that "a registrant cannot be convicted of violating WIS. STAT. § 301.45(6) for failing to report the address at which he will be residing when he was unable to provide this information." *See Dinkins*, 339 Wis. 2d 78, ¶52.

¶22    The State argued that *Dinkins* did not apply to this situation and the trial court agreed.  In analyzing *Dinkins*, the trial court compared Savage's circumstances—living on the street and perhaps being homeless—and Dinkins' circumstances—being in prison and being unable to report where he would live after his release from prison.[7]  The trial court concluded that in Dinkins' situation reporting the address where he would reside after his release from prison was "impossible," whereas in Savage's situation reporting the address where he would reside was not impossible.  The trial court interpreted *Dinkins* as "stand[ing] for the proposition that if it is impossible for a person to report an address because of something outside of their control like, for example, being in prison at the time, then there may be a defense."

¶23    Contrary to the trial court's ruling, our supreme court in *Dinkins* did not limit its decision to situations where it was impossible for sex offender registrants to report an address because of something outside of their control such

---

[7] The trial court focused on two statements in *State v. Dinkins* which it stated, when read together, were "at a minimum confusing and at worst poorly written."  The first statement was that "a registrant cannot be convicted of violating WIS. STAT. § 301.45(6) for failing to report the address at which he will be residing when he was unable to provide this information." *See id.*, 2012 WI 24, ¶52, 339 Wis. 2d 78, 810 N.W.2d 787.  The second statement was that "[h]omelessness is not a defense." *See id.*, ¶44.

as being in prison. Rather, the court stated "we determine that the legislature anticipated that a registrant might be unable to provide the information required by the statute. Significantly, the legislature set forth an alternative procedure for monitoring the whereabouts of registrants who are unable to provide an address without imposing criminal liability." *See id.*, 339 Wis. 2d 78, ¶4.

¶24 The *Dinkins* court held, "[W]e conclude that a registrant cannot be convicted of violating [the statute] for failing to report the address at which he will be residing when he is unable to provide this information." *Id.*, ¶5. The *Dinkins* court explained that, in the context of WIS. STAT. § 301.45(2)(b)-(d), a registrant is "unable" to provide the required information when that information does not exist, despite the registrant's reasonable attempt to provide it. *See Dinkins*, 339 Wis. 2d 78, ¶¶36-38. Pursuant to this language, the registrant must make reasonable attempts to provide the required information. *See id.* It need not be impossible for the registrant to report the required information because of something outside of the registrant's control like, for example, being in prison at the time. *See id.*, ¶¶3-5, 46. The trial court and the State misinterpreted *Dinkins*.

¶25 The *Dinkins* court reasoned that "[t]he sex offender registration statute is not intended to be punitive in nature." *See id.*, ¶49. "It is unreasonable to think that the legislature intended that a registrant be prosecuted for a Class H felony, which carries a maximum sentence of six years in prison, for failing to provide information, which the registrant was unable to provide." *Id.*

¶26 Based upon the language and reasoning in *Dinkins* "that a registrant cannot be convicted of violating [the statute] for failing to report the address at which he will be residing when he is unable to provide this information[,]" we conclude that trial court erred as a matter of law when it held that *Dinkins* did not

11

apply to Savage's situation.[8]  *Id.*, ¶52 (emphasis added).  We further conclude that, contrary to the State's assertion, the law was not unsettled after *Dinkins*.

### III. Because the trial court misconstrued the holding in *Dinkins* it failed to properly analyze Savage's postconviction allegations

¶27    As previously noted, based on the trial court's erroneous interpretation of *Dinkins*, the trial court held that trial counsel's failure to tell Savage that he may have had a defense under *Dinkins* was not deficient performance because Savage did not have a defense under *Dinkins*.  Its holding was premised solely on its erroneous interpretation of *Dinkins*.  The trial court was wrong.  Pursuant to the holding in *Dinkins*, Savage may have a defense for his failure to register as a sex offender.

¶28    We conclude that, in light of *Dinkins* and the trial court's finding that trial counsel failed to tell Savage that he may have a defense under *Dinkins*, the trial court should have analyzed whether trial counsel was ineffective under *Strickland*, 466 U.S. at 687.  However, the trial court did not make any findings of fact and failed to engage in any analysis on the issue.  It relied exclusively on its

---

[8] We note that the dissent's interpretation of the majority opinion in *Dinkins* differs from that of trial court and the State.  The dissent states that

> [p]ursuant to the majority opinion, the newly pronounced dictate is that a convicted and *released* sex offender who … is not otherwise subject to any supervision, can no longer be adjudged criminally liable for failing to provide to the [SORP] his or her address as required … so long as he or she claims to be homeless and unable to find housing.

*See id.*, 339 Wis. 2d 78, ¶88 (Ziegler J., dissenting) (emphasis added).

conclusion that Savage did not have a defense under *Dinkins* for its finding that trial counsel's conduct was not deficient and that there was no prejudice.[9]

¶29     We conclude that, because the trial court misconstrued the holding in *Dinkins*, it failed to properly analyze Savage's allegations that trial counsel was ineffective.  Therefore, we remand the matter to the trial court to make a proper analysis of Savage's allegations based upon the holding in *Dinkins*.  We note that in *State v. Sholar*, 2018 WI 53, 381 Wis. 2d 560, 912 N.W.2d 89, our supreme court stated that:

> [W]hen an appellate court remands for a *Machner*[10] hearing, it must leave both the deficient performance and the prejudice prongs to be addressed, because whether a defendant was prejudiced depends upon the existence of deficient performance.  If trial counsel testifies at the *Machner* hearing that the choice under attack was based on a trial strategy, which the circuit court finds reasonable, it is "virtually unassailable" and the ineffective assistance claim fails.

*Sholar*, 381 Wis. 2d 560, ¶54 (citations omitted).  We conclude that the holding in *Sholar* applies equally to this case.

---

[9] We note that, in contrast, the trial court made specific findings of fact regarding Savage's other postconviction motion allegation that trial counsel told him that he would not receive more than two years of initial confinement, that any sentence would be concurrent with his two-year revocation sentence, and that he would not receive any additional jail time.  The trial court weighed trial counsel's credibility and Savage's credibility and found that trial counsel told Savage "on at least two occasions that the [trial] court did not have to follow the recommendation."  It then concluded there was no prejudice.

[10] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), holds that an evidentiary hearing is a prerequisite for consideration of an ineffective assistance of counsel claim.

## CONCLUSION

¶30 We conclude that the trial court misconstrued our supreme court's decision in *Dinkins* and that, as a result, it failed to make proper findings of fact and failed to engage in any analysis of Savage's allegations that trial counsel was constitutionally ineffective in representing him because she failed to advise him that he had a potential good faith defense under *Dinkins*.

¶31 Based on our discussion above, we remand the matter to the trial court with directions that it engage in a proper analysis of Savage's allegations based upon the holding in *Dinkins*. To be clear, this court is neither finding that trial counsel's performance was deficient nor that Savage suffered any prejudice. We are merely remanding this case to the trial court to make the proper findings of fact and conclusions of law regarding Savage's allegations that trial counsel was ineffective in representing him.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.